## THE ROSWELL MANUFACTURING COMPANY vs. HUDSON, WATSON & COMPANY.

1. Where no time was specified for payment in a draft, it was not due until presented.

(a.) Such a draft being payable to order, and therefore negotiable, one who bought it before presentation, took it before due; and the presumption is that he is a *bona fide* holder.

(b.) Where a single draft payable to order was issued, with no mention of duplicate or second draft contained in it, one who purchased before due was an innocent holder, so far as the face of the paper is concerned, and will be protected, although another draft for the same consideration and to the same effect was afterwards issued by the drawer and paid, by the fraud of the payee. The second draft was not a duplicate or second of the other, in the sense of the commercial law touching foreign bills of exchange.

2. Any circumstances which would put a prudent man upon his guard in purchasing negotiable paper, will be sufficient to constitute notice to a purchaser of such paper before due.

(a.) No fixed time for diligence in such cases can be laid down, but each must depend on its own facts, to be ascertained by the jury, under the charge of the court.

September 11, 1883.

Negotiable Instruments. Promissory Notes. Drafts. Contracts. Notice. Before Judge FAIN. Cobb Superior Court. November Term, 1882.

Reported in the decision.

CANDLER & THOMSON, for plaintiff in error.

JACKSON & KING, for defendants.

JACKSON, Chief Justice.

The defendants in error, as holders of a negotiable paper, sued the plaintiff in error, as drawer thereof, and the case being tried by consent before the judge without a jury, recovered a judgment thereon. That judgment is assigned for error here.

The paper sued on is as follows:

"$300.00.      OFFICE OF ROSWELL MANUFACTURING CO.,
                 ROSWELL, GA., 24th November, 1880.

Pay to the order of A. A. Porter three hundred dollars, value received, and charge the same to account of

To Larned, Haas & Handy,     }    ROSWELL MANUFACTURING CO.,
    232 Chestnut street, Phila-    }    Jas. W. Robertson, Pres."
    delphia, Pa.           }

It was indorsed by A. A. Porter.

1. No time is specified for the payment. Therefore it was not due until presented, by our Code, section 2791. It had not been presented when the holder bought it; therefore, he bought it before due. Therefore, the presumption is that he is a *bona fide* holder. Code, §2787.

But the plaintiff in error says that the payee induced it to issue another paper like this to him for the same consideration, which was presented and paid by the drawee before the paper sued on was presented, and thereby it, as maker or drawer, was discharged from paying this paper.

The evidence is that the duplicate, as it is termed, was drawn on the 24th of December, 1880, and was paid by the drawees on the 7th of January, 1881. On the 1st of January, 1881, the holders were informed by the payee that such a draft or order as the first, that of November 24th, 1880, had been sent him, and he was expecting it, it being on the way. On the 18th of February, 1881, they were informed by the payee that he had heard of the draft, which had gone to Bennett, Texas, instead of Burnett, Texas, where the holders and payee resided, and had been opened there by another man of his surname, and showed them a letter from him to that effect. Whereupon they

loaned him fifteen dollars on the faith of the paper, and on the 3d of March, 1881, when the paper came from Bennett to Burnett, they cashed it in full, and on presenting it in Philadelphia, it was not paid, because that drawn on the 24th of December had been paid.

In the sense of the commercial law touching foreign bills of exchange, the paper which was paid was not a duplicate or second of the other. It was not drawn and issued at the same time, nor was there any mention of the fact of any second or third duplicate being then issued on the face of the paper sued on, so as to notify the commercial world of such others being in existence, and thus to put a purchaser on notice. 1 Daniel on Neg. Inst., pp. 88, 89, 90 ; 1 Parsons Notes and Bills, pp. 58–9, etc.

Therefore, these holders had no notice of the existence of a second or third, the payment of which would discharge this order they were buying. None such was in existence according to commercial usage ; and none such was alluded to on the face of the paper they bought. So that, in law, and so far as the face of this paper disclosed anything to them, they are still innocent holders, though another paper for the same consideration and to the same effect was afterwards issued to the drawer, and paid, and all by the fraud of the payee.

2. Did any facts outside of the paper they bought put them upon inquiry, so as to change their character of *bona fide* holders ?

Our Code declares that "any circumstances which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." Code, §2790.

But two circumstances are disclosed in this record and insisted on here, when the facts and positions of the plaintiffs in error are analyzed. The first is that they would not credit the payee without security, and the second, that the time which elapsed from the making of the paper to their

purchase of it was so long as to put them on inquiry, as prudent men.

Their not crediting the payee, and doling out to him only $15.00 on a paper on its way to him, and which by mistake was delayed, we think, shows prudence and caution. When they paid cash for all on its face afterwards, it had come, and looked right on its face, and they had knowledge from the letter which the payee received from Bennett, as well as from what he said, that a misdirection had sent it to the wrong post-office, and all the delay was explained. So the judge below, sitting as jury and judge both, adjudged and found; and as the law is that no fixed time for diligence in such cases can be laid down, but each must depend on its own facts, to be ascertained by the jury under the charge of the court, we cannot say that the judge erred, as jury on the facts, or as judge in instructing himself in his other character as to the law thereon. 1 Parsons on Notes and Bills, pp. 263, 268–9, and notes.

The presumption being that the holder is innocent, the fact being that the drawer issued the second paper, and thus put it in the power of the payee to defraud the public in its own negotiable paper, and therefore, though innocent of intention to do wrong, enabled another to do it by its sheer carelessness, and thus to put the paper on the holders, we are quite clear that the judgment is right, and that the drawer must pay the draft.

If the holders had been put on notice, or if such facts had been proved as would have put them, as prudent men of business, on notice, then they would stand in the shoes of the fraudulent payee, and could not recover; but as the facts do not rebut, but confirm, the presumption that they are innocent holders of the paper before due and for value, we affirm the judgment.

Judgment affirmed.