| 45 | 103 |
| 95 | 140 |
| 45 | 103 |
| f122 | 575 |

## Luther Beecher v. The Marquette & Pacific Rolling Mill Company et al.

*Corporation mortgages and bonds—Statutory "invalidity"—Creditor in possession not necessarily a mortgager.*

Comp. L., § 2888, forbids a manufacturing corporation to mortgage its property unless authorized thereto by vote of stockholders holding three-fifths interest and notified of the object of the meeting called to obtain such vote; and it provides that, without such notice, proceedings shall not be valid. Where notice was given of a meeting to authorize the issue of bonds to the extent of $100,000, secured by mortgage, and the meeting actually authorized an issue to the amount

of $150,000, it was *held* that so long as the corporators raised no obection to the proceedings, no one else could.

An act which the Legislature declares void on grounds of general policy, is void to all intents; but if the manifest purpose of the law is to protect certain individuals in their own rights, they only are entitled to take advantage of it.

Where the bonds of a corporation were issued on the understanding that they were to be sold for cash, but were in fact pledged to a creditor as collateral to corporate notes held by him, the objection that this disposition of them is unlawful is one that is open only to the corporation or its stockholders, unless it also affected some existing right; it cannot be raised by one who holds the property of the corporation under a voluntary conveyance or by a purchaser, at execution sale, of the equity of redemption.

A creditor of a corporation, who held its bonds as collateral security, guaranteed its performance of a contract, and the corporation contracted with him to carry on its business and apply the proceeds to that purpose and to its current working capital, and agreed that any surplus might be applied to the payment of current indebtedness. The bonds were secured by mortgage. *Held*, that this did not fix the character of his possession of the corporate property as that of mortgagee, and that the proceeds received by him did not apply as payment on the mortgage, and could only be so applied as set-off.

Appeal from Marquette. Submitted October 21 and 22, 1880. Decided January 5, 1881.

FORECLOSURE. Defendant Parks appeals. Decree entered.

*F. A. Baker*, *J. P. Whittemore* and *John Atkinson* for complainant: Ownership of a debt carries with it the title to the mortgage by which it is secured, and entitles the holder to foreclosure. Story's Eq. Pl. § 209 ; *Cooper v. Ulmann* Walk. Ch. 251; *Russell v. Clark* 7 Cr. 97.

*Parks & Mapes*, *F. O. Clark* and *Hampton & Dalzell* for defendant Parks. The holder of a valid second mortgage on corporate property may avail himself of the invalidity of previous bonds and of the mortgage collateral to them, even though the corporation does not seek to repudiate them (*Com. v. Smith* 10 Allen 448) ; a holder of corporate bonds secured by a mortgage to trustees is not usually allowed to sue the

corporation with respect to matters within the trust, unless the trustees neglect to act or have taken a position prejudicial to the bondholders' interests, or there is a vacancy in the office : *Knapp v. R. R.* 20 Wall. 117 ; *Coal Co. v. Blatchford* 11 Wall. 177; *Galveston R. R. v. Cowdrey* 11 Wall. 479.

COOLEY, J.    The mortgage which this suit is brought to foreclose was given by the Marquette & Pacific Rolling Mill Co. to secure the payment of thirty bonds of five thousand dollars, dated July 1, 1871, payable to Sidney D. Miller, trustee, ten years after date, with eight per centum interest, payable semi-annually.    The mortgage contained a provision that in case the interest should at any time be overdue for sixty days, the principal should, at the election of the trustee, become immediately due and payable.    Complainant files the bill as holder of a part of the bonds, the trustee having declined to do so.

The Marquette & Pacific Rolling Mill Co., the mortgagor, makes no defense, and the sole contestant of complainant's rights is William H. Parks, who is grantee of the parties who purchased the equity of redemption at execution sale.    He claims—*first*, that the mortgage never had any validity ; and *second*, that if it had validity in the hands of the trustee, complainant has never acquired any rights under it, for the reason that his demand was not such an one as the mortgage was intended to secure, and he is not in position to claim as a *bona fide* purchaser or holder of negotiable paper.    Peter White, who is made defendant, claims rights under the mortgage which do not antagonize those asserted by the complainant.

I.  The mortgage is said to be invalid because never authorized by the corporation giving it.    The Rolling Mill Company was organized under the statutes for the incorporation of mining and manufacturing companies, which are collected in chapter 95 of the Compiled Laws of 1871.    By one of the sections of this collection it is provided that " No alienation, diversion, sale or mortgage of any or any part of the mine works, real estate or franchise of any corporation men-

tioned in the first section of this act shall have any force or effect, or pass any title thereto, or interest therein, unless expressly authorized by the vote of three-fifths in interest of the entire stock of said company actually present or legally represented at some meeting of stockholders called and notified" as required by law, with an exception not important here.   The provision in respect to notice is that 'No meeting of stockholders shall be or be held to be legal or valid, or the proceedings thereof of any force or effect, unless the directors or other parties or officers calling the same shall cause a notice of the time, place and object of holding the same to be published two weeks for any annual meeting and four weeks for any special meeting previous thereto in some newspaper published in the county   *   *   *   and shall also cause a copy of such notice to be sent by mail to each stockholder of record, at his usual place of residence, twenty days before the time of such meeting.'   Comp. L., §§ 2888, 2887.   The authority, such as it was in this case, was given at a special meeting, and it is claimed—1, there is no sufficient proof that the meeting was duly notified; and 2, that the notice actually given was insufficient to justify what was done at the meeting.

The evidence of the giving of notice of the meeting seems to us ample.   It comes from William Burt, who testifies with much confidence to having caused notice to be published in a newspaper of the county, and produces a copy of the one published.   He also testifies that as agent for the company he paid for the publication, and served notice by mail on the several stockholders.   He gives reasons for his belief that all this was done in compliance with the statute, and the reasons are satisfactory.   We discover no defect here.

The fact that the action taken did not correspond with the notice is more important.   The notice is given in the margin,*

---

*Office of the Marquette & Pacific Rolling Mill Company, }
            Marquette, Dec. 15th, 1870. }

At a meeting of the directors of the Marquette and Pacific Rolling Mill Company, this 15th day of December, A. D. 1870, it was ordered that a meeting of the stockholders of this company be called and held on Monday, the 16th day of January, A. D. 1871, at 10 o'clock A. M., at the

and the object of the meeting is stated to be " for the purpose of electing a new board of directors, and to authorize the issue of bonds to the extent of one hundred thousand dollars, to be secured by mortgage on the company's property, and for such other business as may lawfully come before said meeting."

The meeting was duly convened and no question is made that the stock was sufficiently represented. After electing directors, the record states that " The meeting then proceeded to consider the issue of one hundred and fifty thousand dollars of first mortgage bonds upon the property of the company, and upon a vote, unanimously authorized and instructed the treasurer to make such issue."

The object of the meeting, as testified, is thus seen to have been to authorize bonds and a mortgage to the extent of one hundred thousand dollars, and the authority actually given was to issue bonds and give mortgage for one hundred and fifty thousand dollars. The explanation of this action, which is given on the part of complainant, is that the corporation was already indebted to the amount of fifty thousand dollars secured by mortgage of part of their property, and the new bonds and mortgage were intended in part to provide for that, so that the debt would be increased one hundred thousand dollars only, and the notice be complied with in spirit though not in letter. But in behalf of defendant Parks it is insisted that the motive, not disclosed by the record, is immaterial; the fact being that one thing was proposed and another thing done; and this, according to the express provisions of the statute, cannot be " legal or valid," or " of any force or effect."

These are strong and seem very imperative words, and if full effect is given to them it may be difficult to support this mortgage. But we are not hastily to conclude that words

office of the said company in the village of Marquette, Michigan. Said meeting is called for the purpose of electing a new board of directors and to authorize the issue of bonds to the extent of one hundred thousand dollars, to be secured by mortgage on the company's property, and for such other business as may lawfully come before said meeting of stockholders.

JOHN BURT, President.

thus apparently imperative are to be given a literal interpretation and enforced accordingly.   Courts often speak of acts and contracts as void when they mean no more than that some party concerned has a right to avoid them.   Legislators sometimes use language with equal want of exact accuracy; and when they say that some act or contract shall not be of any force or effect, mean perhaps no more than this : that at the option of those for whose benefit the provision was made it shall be voidable, and have no force or effect as against his interests.   This was found to be the meaning in the mind of the legislature in enacting the Massachusetts usury law.   It was declared in most positive terms that mortgages on usurious considerations should be "utterly void;" but a consideration of its purpose, which was to protect debtors against the enforcement of unconscionable demands, made it clear that it never was intended that strangers to the title should be at liberty to question such a mortgage.   *Green v. Kemp* 13 Mass. 515.   Mr. Justice Bayley in one case intimated that the word *void* in a statute might be construed *voidable* where the provision is introduced for the benefit of parties only, but not where it is introduced for public purposes and to protect those who are incapable of protecting themselves (*Rex v. Hipswell* 8 B. & C. 466, 470), and though this distinction has been questioned (*Rex v. St. Gregory* 2 Ad. & El. 99, 107), much good reason lies at the foundation of it.   If it is apparent that an act is prohibited and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while if the manifest intent is to give protection to determinate individuals who are *sui juris*, the purpose is sufficiently accomplished if they are given the liberty of avoiding it.   A statute would strike blindly if the letter alone were to be regarded, not the spirit.   A statute declares that certain indentures not made as by the statute provided should "be clearly void in law to all intents and purposes;" and it was nevertheless held that, if acted upon, the apprentice gained a settlement thereby. *St. Nicholas v. St. Peter*, Strange 1066.   And in Ohio a purchase at a judicial sale by one who acted as appraiser of the

property, though the statute declared it should be "considered fraudulent and void," was held to be voidable only on an interposition or proceeding by a party in interest, directly for the purpose of avoiding it.   *Terrill v. Auchauer* 14 Ohio N. S. 80.   This subject is considered at length and many authorities examined in *State v. Richmond* 26 N. H. 232, to which we refer.

The statute now under consideration was passed to protect the interests of stockholders in mining companies.   It intends that their mining property shall not be conveyed away or mortgaged except by their deliberate action after they have been notified of a proposal to do so, and have had time to deliberate upon and fully consider it.   But the matter does not concern the public at large ; no principle of public policy is at stake ; no wrong, direct or indirect, is done to any human being if conveyance is made or mortgage given without the exact notice required, unless it be a wrong to the stockholders themselves.   And as others are not concerned, why should the statute give them the right to raise questions of regularity which the stockholders elect to waive?   We are satisfied such was not its purpose.

In this case the stockholders acted deliberately in sanctioning the giving of the mortgage, and they now make no complaint.   The bonds and mortgage were given, and have been acted upon.   Complainant has loaned money in reliance upon them.   Interest has fallen due and he has filed his bill to foreclose, and neither the corporation nor any of its stockholders has seen fit to make defence.   The corporators may possibly have had a right to take advantage of the exact words of the statute, repudiate their action, and treat the mortgage as of no force or effect, but they had an equal right to treat it as effective and valid.   They have chosen the latter course, and this is conclusive upon the corporation and upon any one claiming under it.   What would have been the result had no corporate meeting ever been held we do not consider.

II. The corporation became debtor to Beecher in five notes of ten thousand dollars each, each of which was secured

by the deposit of three of the bonds as collateral. Two of the notes have been paid and three remain unpaid. The bonds were issued on an explicit understanding that they were to be sold for cash. This is apparent from the proceedings of the company and its officers as they are exhibited in the record of the case. It is contended on the part of defendant Parks.that the pledge of the bonds to Beecher was unlawful because in violation of the understanding under which they were authorized. But here again Parks attempts to make an objection which is only available to the company or its stockholders. He has purchased only the equity of redemption, and not any right the corporation or its stockholders may have had to complain of an abuse of trust on the part of the corporate officers. He is in no better position than he would be if he held by voluntary conveyance from the company; in which case it is plain that he could not make this objection. *Fairfield v. McArthur* 15 Gray 526; *Gale v. Gould* 40 Mich. 515. It would of course have been different if the transaction had at the time affected some existing right; as was the case in *Van Deusen v. Frink* 15 Pick. 449, and some others which are referred to in the briefs.

III. It is also urged that Beecher has been in possession of the mortgaged property as mortgagee, and has received in person or through his agent a large amount of money and other personal property which he must account for on the mortgage, and which, if accounted for, will more than extinguish the three notes which he now holds.

The facts which are supposed to give ground for this position are that in December, 1872, Beecher gave a guaranty to the Western Transportation & Coal Co. of the performance of a contract made by the Marquette & Pacific Rolling Mill Co. to deliver ten thousand tons of iron ore, and the latter company, in a contract reciting that fact, and also the indebtedness of the company to Beecher and the delivery to him of collateral bonds, stipulated with him that he should carry on the business of the company; that the proceeds to accrue from said sale of ore should be applied by Beecher or his agent

"from time to time in working the mine of said company, rebuilding its furnace and its current working capital;" and that in case "any surplus accrues in the course of the business of said company above the amount necessary to provide for working the mine of said company, rebuilding its furnace and its current working capital, such surplus may be used and applied for the payment of current indebtedness." There is nothing in this that fixes the character of Beecher's possession as that of mortgagee. He was in as contractor, and bound under his contract to account to the company. But the rents, profits or proceeds received did not apply as payment on the mortgage and could only be applied by way of set-off. No offer has been made to apply them in this suit.

This disposes of the defences which are set up to the complainant's demand. The claim of White remains for examination.

IV. The claim of White arises upon the following facts: Hiram A. Burt as well as complainant was guarantor of the performance of the contract made with the Western Transportation & Coal Company as above stated. He was also indorser for the Marquette & Pacific Rolling Mill Co. on paper held by a bank of which White was president, in the amount of thirty thousand dollars. In the agreement of December, 1872, between Beecher and the Rolling Mill Co., it was agreed that the bonds for one hundred and fifty thousand dollars and the mortgage collateral thereto, should be held by the trustee for the payment of fifty thousand dollars prior mortgage and interest, and the thirty thousand dollars and interest which then remained unpaid to Beecher of his fifty thousand dollars loan to the Rolling Mill Co., and also for the full liquidation and discharge of any liabilities of any kind to which Beecher might be subjected by reason of his guaranty of the contract with the Transportation and Coal Co. By another contract between Beecher and Burt, bearing the same date with the contract above mentioned, Burt was made agent for Beecher at the mine, and Beecher agreed that whatever was received by him under his contract with the Rolling Mill Co. should be held and controlled by him

for the protection of Burt as guarantor as aforesaid, and also to such extent as might be necessary to protect Burt for all amounts due or to become due to him from the company, and for liabilities thereafter incurred, etc.   Upon the indebtedness of the company to the bank Burt was thereafter sued and judgment recovered, whereupon White assumed the indebtedness and Burt assigned to him all his rights in the contract of December, 1872, made with complainant as above stated.   The board of directors of the Rolling Mill Co. formally approved of the contract between Beecher and Burt, so far as it undertook to give to Burt security, and authorized Beecher "to hold the securities therein referred to for the joint benefit of said Burt and said Beecher as therein stated."

It is contended on the part of both complainant and defendant Parks that the contracts and the action of the directors upon them do not secure Burt for pre-existing liabilities and consequently that White can claim nothing under them.   We have examined the contracts with care and must admit that the construction is not free from all difficulty; but we are satisfied the intention was to give Burt full protection.   There was no just reason for restricting his protection to his guaranty on the contract with the Transportation and Coal Co. and to accruing indebtedness, and it is not likely he would have been content to take security thus restricted.   In the light of all the facts it seems to us apparent that the intention was Burt as well as Beecher should be protected to the full extent that whatever was pledged to Beecher could give protection.

V. Complainant, by reason of the failure to pay interest, elects to treat the principal sum represented by the bonds as now due.   The mortgage gives this election to the trustee, and though he declines to foreclose, it is insisted no one else can elect for him.   The point has not been discussed, and we do not pass upon it, as we conceive it to be unnecessary. The principal sum will be due before foreclosure can be completed, and an election will be of no moment.

Decree will be entered in accordance with these views.

The other Justices concurred.