## FIDELITY TRUST COMPANY *v.* MAYS *et al.*

1. Where suit was brought by an indorsee of a promissory note payable to named payees or order, and the defendants pleaded that the note was given for the purchase-money of personal property, that fraud was used by the payees in making the sale, that the property was worthless and there was a failure of consideration, and that the plaintiff was not an innocent purchaser for value, before due, and without notice, under the Civil Code (1910), § 4291, any circumstances which would have placed a prudent man upon his guard in purchasing negotiable paper would have been sufficient to constitute notice to the purchaser of such paper before it was due.

2. The plaintiff, a corporation of Kansas City, Missouri, claimed to have purchased the note in suit, payable to certain payees or order, for value, before due, and without notice, and introduced evidence which tended to show that it bought at one time from the payees, whose commercial rating was from $50,000 to $75,000, and one of whom lived in the place where the plaintiff was located, notes aggregating $68,058.39, all without recourse on the payees, including that in suit, the makers of which were residents of this State, and that a letter from an officer of the Georgia bank, at which the notes were payable, was exhibited to the plaintiff's president, dated about six months before the purchase, and expressing the opinion that the makers were good.   Evidence was introduced by the defendants tending to show that though the note provided that interest should be paid annually, such note was not indorsed at a time about two weeks after the first installment of interest had become due and when it remained unpaid.   It also appeared that the note was not sent for collection to the bank where it was payable, for about a week after the principal became due.   *Held,* that there was enough evidence to submit to the jury the issues as to when in fact the note was negotiated by indorsement, and whether the circumstances were sufficient to have placed a prudent man on his guard in purchasing the note when it was negotiated.

   (*a*) If a promissory note payable to order provided on its face for the payment of interest annually, and if an installment of interest was past due and unpaid when the note was negotiated by indorsement, and other facts appeared as above indicated, the court was not required to instruct the jury, as a matter of law, that the note was or was not dishonored, but the facts could be proved for the consideration of the jury in determining, under proper instructions, whether or not the indorsee was, as a prudent man, put on his guard in taking the paper, so as to let in defenses of fraud and failure of consideration.

   (*b*) There was sufficient evidence to support the verdict.

DECEMBER 17, 1914.

Complaint. Before Judge Daniel. Butts superior court. October 11, 1913.

The Fidelity Trust Company, of Kansas City, Missouri, brought suit against S. H. Mays and others on a joint and several promissory note. It was dated, Jackson, Ga., December 19, 1905, and was due January 1, 1908, to McLaughlin Bros., or order, "for value received." It was for $1,100, payable at the First National Bank, Jackson, Ga., "with interest at seven per cent. per annum, interest payable annually." On the back of the note appeared the following indorsements: "Dec. 19, 1905, by cash $116.67." "Without recourse, McLaughlin Bros." "Pay to any Bank or Banker, or order, for collection. Fidelity Trust Company, Kansas City, Mo., Overton Cook, Treas." The defendants pleaded, that the note was given, together with two others, for the purchase-price of an imported stallion, bought for breeding purposes, the entire purchase-price aggregating $3,300; that fraudulent misrepresentations were made to induce the purchase; that the consideration of the note had totally failed, and the horse was worthless for the purpose for which he was purchased; and that the plaintiff was not a bona fide purchaser for value, before due, and without notice.

On the trial the evidence of the president of the plaintiff company, in answer to interrogatories, was introduced on behalf of the plaintiff. He testified, among other things, as follows: The note in suit was bought by the plaintiff, in the usual course of trade, with other notes, on June 6, 1906. The consideration for this note was $980.61. The consideration for all the notes bought on that date was $68,058.39. The financial standing of McLaughlin Bros. is very high. They are rated by Dun's Mercantile Agency at from $50,000 to $75,000. The witness is acquainted with one of the firm. Before the purchase was made, a letter from an official of the bank in Jackson, Ga., was exhibited to the company, dated December 23, 1905, in which it was stated that the note was good. Payment for this note was made by an entry as a cash credit to McLaughlin Bros. on June 6, 1906. The witness had no notice of any failure of consideration of the note, or he would not have purchased it. The entire lot of notes above mentioned were purchased from McLaughlin Bros. without recourse. The note in suit remained in possession of the plaintiff from the time of its purchase until the time when

the testimony was given. It has been in the plaintiff's bank at all times except when out for collection of principal or interest.

The defendants introduced evidence tending to show misrepresentation by the sellers as to the age and characteristics of the horse, in connection with the sale; that a fraud was perpetrated by filing the horse's teeth so as to make him appear younger than he was; that he was practically valueless for the purpose for which he was bought, and that he was worth very little as a work-horse, the estimates as to his value ranging from $150 to $300. On the subject of whether the plaintiff was a bona fide purchaser of the note for value, before due, and without notice of any defect or defense, Mays, one of the defendants, testified as follows: He saw the note now sued on at the First National Bank of Jackson on the second day of January, 1907. He went to the bank because he was notified that the note due in 1907 was there for collection. One of the officials of the bank handed him the note now in suit. He examined it carefully. It was not then indorsed by McLaughlin Bros., and there was no entry upon it except that of the credit which was placed there on the day when it was made. He stated to the bank official that this was not the note for which he was looking. It was handed to him by mistake, and the official "snatched" it from him.

In rebuttal the bookkeeper of the bank at Jackson testified. that the note came to the bank in January, 1908, after it was due, for collection, and. that it was then indorsed by McLaughlin Bros.; that he searched the record of the bank from December, 1906, to January, 1907, and there was no record of the note having been so forwarded during those months.

The jury found for the defendants. The plaintiff moved for a new trial, which was refused, and it excepted.

*W. E. Watkins,* for plaintiff. *John R. L. Smith,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1. Suit was brought on a promissory note by the indorsee thereof against the makers. The note was payable to order, and was indorsed without recourse. The defendants pleaded, that the note, with two others, was given for the purchase of a stallion; that fraud was perpetrated upon them in the sale; that there had been a failure of consideration, in that the horse was worth nothing for breeding purposes, for which he was bought, and was worth less for other

purposes than the amount which had been paid upon the purchase-money; and that the plaintiff was not a bona fide purchaser of the note for value, before due, and without notice. On the trial evidence was introduced to support the allegations of fraud and failure of consideration. The note was dated December 19, 1905, and was due January 1, 1908, with interest at seven per cent. per annum, payable annually. The evidence of one of the defendants was to the effect that he saw the note on the second day of January, 1907, in the possession of a bank at the place where he resided, and that it then had no indorsement for transfer entered upon it.

Counsel for the plaintiff contended, that there was no evidence that in fact an installment of interest was then overdue; that, if so, it was not a circumstance for submission to the jury, as bearing on the question of notice to the indorsee; that there was no evidence authorizing a finding for the defendants, and that the court should have stricken the evidence offered by the defendants and have decided, as matter of law, that the plaintiff was entitled to recover.

We deem it unnecessary to trace at length the history of the English decisions on the subject of what facts would be sufficient to let in defenses of fraud or failure of consideration as against the indorsee of a note. Some of the cases arose in the effort to recover notes which had been lost or stolen; others, in suits upon notes or bills. In Gill *v.* Cubitt, 3 Barn. & Cress. 466 (10 E. C. L. 215), which was decided in 1824, where a bill of exchange was stolen during the night, and taken to the office of a discount broker, early in the following morning, by a person whose features were known, but whose name was unknown to the broker, who, being satisfied with the name of the acceptor, discounted the bill, according to his usual practice, without making any inquiry of the person who brought it, the Court of King's Bench held, that, in an action on the bill by the broker against the acceptor, the jury were properly directed to find a verdict for the defendant, if they thought that the plaintiff had taken the bill under circumstances which ought to have excited the suspicion of a prudent and careful man; and, the jury having found for the defendant, the court refused to disturb the verdict. Abbott, C. J., Bayley, J., and Holroyd, J., each delivered an opinion. They declined to follow the statement made by Lord Kenyon in Lawson *v.* Weston, 4 Esp. 56. Bayley, J., after referring to certain previous cases, expressed the opinion that, as

part and parcel of the question of bona fides, it was a proper question for the consideration of the jury whether the indorsee of a bill of exchange inquired with that degree of caution which, in the ordinary course of trade, a prudent trader ought to use. This decision was followed in certain other cases. In Crook v. Jadis, 5 Barn. & Ad. 909, decided in 1834, without any reference being made to the case of Gill v. Cubitt, supra, it was held, that, in an action by the indorsee against the drawer of an accommodation bill, which had been fraudulently disposed of by the first indorsee, and afterward discounted by the plaintiff, it was no defense that the plaintiff took the bill under circumstances which ought to have excited the suspicion of a prudent man that it had not been fairly obtained; but that the defendant must show that the plaintiff was guilty of gross negligence. See also Backhouse v. Harrison, 5 Barn. & Ad. 1098, in which reference was made to the two preceding cases. The doctrine of gross negligence was again announced. Denman, C. J., and three other judges each delivered brief opinions. Patterson, J., said: "I have no hesitation in saying that the doctrine first laid down in Gill v. Cubitt, 3 B. & C. 466, and acted upon in other cases, that a party who takes a bill under circumstances which ought to have excited the suspicion of a prudent man can not recover, has gone too far, and ought to be restricted. I can perfectly understand that a party who takes a bill fraudulently, or under such circumstances that he must know that the person offering it to him has no right to it, will acquire no title; but I never could understand that a party who takes a bill bona fide, but under the circumstances mentioned in Gill v. Cubitt, does not acquire the property in it." In Goodman v. Harvey, 4 Ad. & El., 800, which was decided in 1836, it was held, that, in an action by the indorsee of a bill who has given value, if his title be disputed on the ground that his indorser obtained the discount of such bill in fraud of the right owner, the question for the jury was, whether the indorsee acted with good faith in taking the bill; that the question of whether or not he was guilty of gross neglect was improper; and that gross neglect might be evidence of mala fides, but was not equivalent to it.

From the English decisions two lines of decisions have grown up in America. Moreover, in different States of the United States more or less variant legislative acts have been adopted in regard

to the subject of negotiable instruments and defenses to them in the hands of an indorsee for value before due. In a number of States statutes have been adopted which provide, that, to constitute notice of an infirmity in the instrument or defect in the title of the person holding it, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. It would be useless to cite cases decided under such statutes. See Mee *v.* Carlson, 22 S. D. 365 (117 N. W. 1033, 29 L. R. A. (N. S.), 351, and note, especially page 386 et seq.).

We will now consider the rule in this State and its development. In *Matthews* v. *Poythress,* 4 *Ga.* 287, decided in 1848, it was held, that the title of the purchaser of a negotiable bill, note, or other security transferable by delivery, who took it before due, bona fide, and for value, from one who himself had no title, was a good title; that such title was not defeated by the want of such caution in the purchase as a careful and prudent man would take of his own affairs, or by gross negligence; that it might be defeated by proof of mala fides in the purchase; that mala fides was notice, actual or constructive, of the fact that the security was not the property of the person who offered it, and a privity with or participation in a fraud upon the true owner; and that the want of proper caution, or gross negligence, or any fact that legitimately might go to show such notice, privity, or participation, might be submitted to the jury, subject to the direction of the court upon the law of the case. The first Code, which was adopted in 1860, but which did not go into effect until January 1, 1863, contained the following as section 2740: "Any circumstances which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." This was included in an article dealing with the rights of holders of negotiable instruments. The same action has been carried forward in the different Codes and appears in the Code of 1910 as section 4291. The first Code, that of 1895, and that of 1910 was each adopted by an act of the legislature, thus becoming statute law. Whatever may have been the discussion of the subject prior to such codification, the rule is now established in this State by legislation. It is made somewhat analogous to the equitable rule that notice sufficient to excite attention and put a

party on inquiry is notice of everything to which it is afterwards found that such inquiry might have led. Civil Code (1910), § 4530.

In *Merchants' and Planters' National Bank* v. *Trustees of the Masonic Hall*, 62 *Ga.* 271, an action of trover was brought to recover certain negotiable bonds which were alleged to have been. wrongfully used by the treasurer of the trustees by depositing them as security for debts of a firm to which he belonged. It was held, that possession of a security negotiable by delivery before due is presumptive evidence of title thereto; but that when such security is proved to have been stolen or otherwise appropriated in fraud of the rights of the owner, then the onus is upon the possessor to show that he took it bona fide and for value; and that upon his showing this, then the owner must show mala fides—that is, that the possessor had notice actual or constructive, of the title of the true owner. From the entire decision it appears that it was held that notice might be proved by circumstances as well as by direct evidence; and the trial court, on request, charged (p. 276), that "this notice must be actual or constructive; it must be based on circumstances which would place a prudent man on his guard in purchasing negotiable papers."

In *Hamilton* v. *Wilson*, 67 *Ga.* 494, where a blank form was used in drawing a guano note, which contained a provision waiving the plea of worthlessness of the guano, but such provision was erased by a pen-scratch, in such manner, however, as to remain perfectly legible, it was held that this was a circumstance tending to show that the purchaser of the note was put on inquiry. Later statutes have been passed in regard to the inspection of fertilizers, but they do not destroy the effect of this ruling as to putting a purchaser on notice by circumstances. In the opinion of Jackson, C. J., it was said: "Our Code is explicit that any circumstances which would put a prudent man on his guard shall be sufficient to constitute notice to a purchaser before due." The code section as then numbered was cited. In *Roswell Mfg. Co.* v. *Hudson*, 72 *Ga.* 24 (2), the rule was again distinctly declared. See also *Love* v. *Lamar*, 78 *Ga.* 323 (3 S. E. 90); *Morrison* v. *Hart*, 122 *Ga.* 660 (50 S. E. 471); *Oliver* v. *Miller*, 130 *Ga.* 72 (60 S. E. 254); *Bank of Covington* v. *Cannon*, 133 *Ga.* 779 (67 S. E. 83).

While the old statement that circumstances which ought to ex-

cite the "suspicion" of a prudent man will affect the taker of a negotiable security for value and before due may not be a desirable mode of expression, because of the vagueness of the word "suspicion," yet, since the adoption of the first Code in this State, the rule, that any circumstances which would place a prudent man upon his guard in purchasing negotiable paper shall be sufficient to constitute notice to a purchaser of such paper before it is due, has become a part of the statute law of the State. The contention that this rule applies only in cases of fraudulent procurement of the instrument can not be sustained. An examination of the decisions cited above will show that they are not limited to such cases, and the language of the Civil Code (1910), § 4291, is not so restricted. Moreover, in section 4286 it is declared that the bona fide holder for value of a bill, draft, or promissory note, or other negotiable instrument, who receives it before it is due, "and without notice of any defect or defense," shall be protected from any defenses set up by the maker, acceptor, or indorser, except non est factum, gambling or immoral and illegal consideration, or fraud in its procurement. The words "without notice of any defect or defense" tend to confirm the view that section 4291, in dealing with what would constitute notice, did not limit the rule to the single defense of fraud in the procurement of the instrument.

2. Was there sufficient evidence to sustain the verdict? Unquestionably there would have been, if the suit had been brought by the original payees; and the only question is whether there was sufficient evidence of notice to the plaintiff as holder. The president of the plaintiff company testified that the note in suit, together with a number of others, was purchased from the payees on June 6, 1906, and that it had been in the possession of the plaintiff from that time until the testimony of the witness was taken, except when out for the collection of the principal or interest. While he testified that the payees of the note were in good financial standing, and were rated by a mercantile agency as being worth from fifty to seventy-five thousand dollars, nevertheless he also testified that the plaintiff bought from them at one time notes aggregating $68,058.39, and that such notes were transferred to the plaintiff without recourse upon the payees. One of the defendants testified that he saw the note now sued upon on January 2, 1907, fourteen days after the first installment of interest fell due, and

that it then had no indorsement upon it except the entry of the payment which was made on the day when it bore date. Thus, if the evidence of the plaintiff's president be construed as meaning that the note was indorsed to the plaintiff on June 6, 1906, there was a conflict in the evidence as to that fact, and there was evidence tending to show that the plaintiff did not take as an indorsee until after an installment of interest had fallen due and had not been paid. In *Farris* v. *Wells,* 68 *Ga.* 604, it was held, that, where a note, draft, or check was made payable to order, the indorsement of the payee was necessary to transfer the legal title to another, and that without such indorsement the transferee took the paper as a mere chose in action, and to recover upon it had to aver and prove the consideration. The plaintiff's president also testified that payment for the note was made by entering the amount of the purchase-price as a cash credit "on the account of McLaughlin Bros." It appears that, although the principal of the note was due January 1, 1908, it was not sent for collection to the local bank at the place of the residence of the makers until January 9th.

It was argued by counsel for plaintiff in error that there was no evidence that the interest had not in fact been paid when due. But the plaintiff sought to recover interest on the note from its date, thus claiming that it was unpaid. It was further insisted that it was a question of law whether non-payment of the interest when due would operate to dishonor the note and give notice to the indorsee. While the Code of this State (§ 4287) adopts the rule that if there be several notes constituting one transaction, but due at different times, the fact that one is overdue and unpaid will operate as notice to the purchaser of all, yet a provision in the body of the note for the payment of interest at stipulated times has never been treated as standing on the same footing as the maturity of the principal, relatively to the question of notice. Unless so provided by contract, non-payment of the interest does not mature the principal. The time for its payment remains unaffected. Failure to pay the interest may be shown, in connection with other facts, in determining whether the circumstances were such as to put a prudent man upon his guard. Generally it is a question of fact as to what would be sufficient for that purpose. See, in this connection, *Park* v. *Buxton,* 10 *Ga. App.* 356 (73 S. E. 557). But if there is no evidence to support the finding that

the indorsee, as a prudent man, would have been put upon his guard, the question may sometimes be controlled as matter of law. *Love* v. *Lamar,* and *Bank of Covington* v. *Cannon,* supra. Somewhat analogously it has been held that negligence is a question for the jury. But if there is no evidence to support a finding of negligence, the question may become one of law upon a motion for a nonsuit or a motion for a new trial.

From what has been said above, it follows that there was no error in admitting evidence as to the fraud perpetrated upon the makers of the note, or as to circumstances tending to charge the plaintiff with notice. Nor was there error in submitting the issue to the jury. There was some evidence from which the jury might have found that the horse was worth less than the amount which had been paid on the purchase-money, or even less than the part of such payment which had been credited upon the note now in suit. Three notes were given for the balance of the purchase-price. Apparently the first which fell due had been transferred and collected by the transferee. The second was transferred, and is now in suit. Under the evidence, the jury were authorized to find that there was a failure of consideration, that the fraud practiced by filing the teeth of the horse was not discovered for a considerable length of time, and that the defendant owed nothing as a balance of purchase-price. The case, therefore, is different from that of *Park* v. *Zellars,* 139 *Ga.* 585 (77 S. E. 922).

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*