GEORGIA GRANITE RAILROAD CO. *et al.* v. MILLER, trustee, *et al.*

PER CURIAM. 1. The term "ultra vires," whether with perfect accuracy or not, as to the acts of a corporation, or acts purporting to be done by it, has been used in more than one sense. An act is ultra vires in the strictest sense when it is beyond the scope of the powers granted by law to the corporation, so that it is not in the power of the corporation to perform it under any circumstances. Sometimes an act is said to be ultra vires with reference to the rights of certain persons, when the corporation can not legally perform such act without their consent. Sometimes an act is said to be ultra vires with reference to some specific purpose, when the corporation can not perform it for that purpose.

2. If an act be done which is ultra vires in the sense first mentioned, it is wholly void, and the corporation may avail itself of that fact as a defense. If an act is ultra vires in either of the last two senses, the right of the corporation to avail itself of the defense will depend upon the circumstances of the case. Miners' Ditch Co. *v.* Zellebach, 37 Cal. 543 (99 Am. D. 300).

(*a*) There is a distinction between the doing by a corporation of an act beyond the scope of the powers granted to it by law, and an irregularity in the exercise of the granted powers. Zabriskie *v.* Cleveland etc. Railroad Co., 23 How. (64 U. S.) 381, 398 (46 L. ed. 488); Central Transportation Co. *v.* Pullman Palace Car Co., 139 U. S. 24, 59-60 (11 Sup. Ct. 478, 35 L. ed. 55); Louisville etc. Railway Co. *v.* Louisville Trust Co., 174 U. S. 552, 570 (19 Sup. Ct. 817, 43 L. ed. 1082).

3. The general law which provides the method of incorporating railroad companies, and declares powers possessed by companies incorporated thereunder, contains a provision authorizing such a company to borrow "such sums of money, at such rates of interest and upon such terms, as such company or its board of directors shall deem necessary or expedient, and to execute one or more trust deeds or mort-

gages, or both, if the occasion may require, on said railroad in process of construction, or after the same has been constructed, for the amounts borrowed, or owing by such company; . . but all rights to borrow money, issue bonds or other evidences of debt, and to execute trust deeds or mortgages to secure the same, shall be exercised within the limitations and in the manner which shall be prescribed by the law of the State." Civil Code (1910), § 2585, par. 10. Provision is also made as to the rights of purchasers at a sale under such a trust deed or the foreclosure of such a mortgage. Id. par. 11, 12. Section 2583 contains the following clause: "In no case shall said road be bonded or capital stock increased except by a vote of two thirds of the capital stock of said corporation, represented at an annual or a special meeting of stockholders called for that purpose, and after each stockholder has been notified in the manner prescribed for notifying stockholders; and in addition to said notice there shall be published in some newspaper in the town or city where the principal office of said corporation is located, once a week for four weeks prior to the time of holding said meeting, a notice stating that at said meeting so called an increase of the stock or an issuance of the bonds of the road will be considered, either or both. No action contemplated under this section, looking to an increase of stock or increase of bonds, shall be legal unless there shall be present at said meeting a majority of stock, represented in person or by written proxy." *Held,* that if a railroad company was incorporated under the general incorporation law above mentioned, and if a special meeting of the stockholders was held, and also a meeting of the board of directors, at each of which a resolution was adopted authorizing the issuance of bonds and the execution of a mortgage or trust deed to secure them, and if the bonds were issued and the mortgage or deed of trust executed, and the latter contained a recital that notice was duly given, that a majority of all the capital stock was represented in person or by proxy, and that the stockholders by unanimous vote authorized the issuance of such bonds so secured, and if the bonds found their way into the hands of innocent purchasers, such bonds and mortgage or deed of trust were not so void that they could not be ratified, or that the company might not be estopped from contesting their validity, even if in fact notice of the stockholders' meeting was not published for the time stated in the statute and one or possibly two persons who were stockholders, holding each one share of stock, did not receive notice of the meeting.

(*a*) There was evidence sufficient to authorize the finding of the auditor that there had been ratification by the company of the acts of its officers in issuing the bonds, by acquiescence in such acts with knowledge thereof; or perhaps more strictly, as to it, there was an estoppel.

(*b*) The only persons defending against the foreclosure of the mortgage of the railroad company are the company itself and the trustee of bondholders of the granite company, who claims as such trustee to own a majority of the stock of the railroad company, as part of the security for the bonds. As to the voting of this latter stock at the meeting of the stockholders of the railroad company, a ruling is hereinafter made.

(c) No estoppel on the public arises in this State as to unauthorized acts of public officers; but such a point is not here involved. Civil Code (1910), § 303.

ATKINSON, J., dissents as to the preceding notes 3 and (a) and (b). He is of opinion that if any stockholder of the railroad company was not notified, as prescribed in the Civil Code, § 2583, the bonds are void.

4. The provisions contained in the Civil Code (1910), § 2583, are primarily for the benefit of the stockholders, and, so far at least as their interests are involved, may be waived by them. Whether or not a creditor with a lien on the property of the railroad company, arising before or after the giving of the mortgage or deed of trust to secure the bonds, or any other person, could contest the validity or priority of such a mortgage or deed of trust, and whether there is a difference between contingencies dependent on things extrinsic the corporation, such as registration in a public office, and those peculiarly within the knowledge of the corporation or its agents, is not now involved or necessary for decision. See, on the general subject, 3 Thomp. Corp. (2d ed.) §§ 2563, 2564, 2565; Campbell v. Argenta Gold & Silver Mining Co., 51 Fed. 1; Hervey v. Illinois Midland Ry. Co., 28 Fed. 169; Paulding v. Chrome Steel Co., 94 N. Y. 334; Rochester Savings Bank v. Averell, 96 N. Y. 467; Atlantic Trust Co. v. Crystal Water Co., 72 App. Div. 539 (76 N. Y. Supp. 647); Nelson v. Hubbard, 96 Ala. 238 (11 So. 428, 17 L. R. A. 375); Thomas v. Citizens Horse Ry. Co., 104 Ill. 462; Beecher v. Marquette & Pacific Rolling Mill Co., 45 Mich. 103 (7 N. W. 695).

5. A corporation organized for quarrying and selling granite issued bonds, and executed a mortgage or deed of trust to a trustee to secure them. Being the owner of two hundred and forty-three shares of stock in a railroad company, it caused a certificate for that number of shares to be issued to the trustee of its bonds. The mortgage or deed of trust described various physical properties which were covered by it, and also mentioned as a part of the property included in it the 243 shares of railroad stock. It contained the following clause: "The party of the first part [the granite company] shall be suffered and permitted to possess, manage, operate, and enjoy the premises and property hereinbefore described or mentioned, with the appurtenances, and to collect, receive, use, and enjoy the rents, income, issues, and profits thereof, and to dispose of the same in any manner not inconsistent with these presents; and especially may its board of directors distribute and pay over to its stockholders the net annual income and profits after paying the interest due on any and all of the said bonds from time to time outstanding." Held, that, under such contract, as between the trustee and the granite company, the right to vote the stock in the railroad company was in the granite company.

6. Although the proxy to vote such shares of stock in a meeting of stockholders of the railroad company was not shown to have been authorized by a vote of the directors of the granite company in regular meeting, yet, in view of the evidence as to the manner in which the business of the granite company had been conducted, and the investing, by ac-

quiescence of the stockholders, of the executive officers with powers and functions normally exercised by a board of directors, as a continuous and permanent arrangement, and in view of the fact that the granite company has made no complaint on the subject, the proxy issued by its president and secretary to vote the shares of stock above mentioned, and the vote cast accordingly, will not be declared void at the instance of the trustee of the bonds of the granite company, or at the instance of the railroad company, in a proceeding to foreclose a mortgage or deed of trust executed to secure bonds issued by it; but the vote of such stock will be treated as cast by the granite company.

(a) The decisions in *Garmany* v. *Lawton*, 124 *Ga.* 876 (53 S. E. 669, 110 Am. St. R. 207), and *Potts-Thompson Liquor Co.* v. *Potts*, 135 *Ga.* 451 (69 S. E. 734), are not controlling, so far as to hold that the president and secretary of the railroad company had authority to issue bonds for it. Both of those cases dealt with private corporations. The former involved the making of a mortgage to secure a promissory note. The latter involved the renting of a storehouse or building where it was contended that the corporation conducted a branch of its business. Neither of the corporations was a railroad company, and there was no statute in regard to them similar to Civil Code § 2583 in regard to the issuance of bonds by railroad companies. So far as applicable to the facts, however, those decisions may have force in relation to the granite company.

7. Under the evidence, the auditor was authorized to find that the bonds of the railroad company had found their way into the hands of innocent purchasers for value and without notice of any defense to them, if any existed.

(a) If the bringing of a suit to foreclose the mortgage or deed of trust against the railroad property because of an alleged default in the payment of interest, and the subsequent dismissing of such suit by the corporation which was at that time the trustee under the mortgage or deed of trust to secure such bonds, should be held to put such corporation on inquiry when it subsequently became a taker of the bonds as security for an indebtedness to it, nevertheless the evidence warranted the auditor in finding that the holders of the bonds for whose benefit the present foreclosure suit was brought, and who became parties thereto, and their immediate predecessor as the holder of such bonds, were purchasers of the same for value, before due, and without notice; and the presiding judge was authorized to overrule the exception to such finding.

(b) That overdue and unpaid interest coupons are attached to a bond negotiable by delivery does not of itself, as matter of law, make the bond to which they are attached dishonored paper, or charge the taker for value with notice of a defense to such bond, if any exists. At most, the existence of such attached coupons would only be a circumstance, which might be considered with other facts, in determining whether the taker was affected with notice. Civil Code (1910), § 4287; *Fidelity Co.* v. *Mays*, 142 *Ga.* 821 (83 S. E. 961); Railway Co. v. Sprague, 103 U. S. 756 (26 L. ed. 554).

8. The contract under which the holders of the bonds for whose benefit the

foreclosure proceedings were instituted can not be declared to be invalid on the ground that on its face it is a contract in restraint of trade, or obnoxious to the provisions of the act of Congress commonly known as the Sherman anti-trust law, or is in violation of the constitutional provision of this State prohibiting corporations from making contracts with each other which may have the effect, or be intended to have the effect, to defeat or lessen competition in their respective businesses, or to encourage monopoly.   Civil Code (1910), § 6466.

(a) In so far as attacks were made upon the contract on the grounds just above indicated, not by reference to its face alone, but by taking it in connection with extraneous testimony, the auditor was authorized to find that such contract was not in restraint of trade, either intrastate or interstate, and that it was not illegal under the Sherman anti-trust law, or under the constitution or law of this State.

(b) If the criticisms in the brief of counsel for plaintiffs in error upon the sufficiency of the findings of the auditor on this subject be considered as arguments supporting the exception to the overruling of one ground of the motion to recommit the auditor's report, they can not prevail.   While the report of the auditor did not in terms refer to the intent with which the contract was made, his findings on this subject were sufficient to uphold the contract as not illegal.   They were authorized by the evidence, and the presiding judge did not err in overruling the exceptions based on the findings in this regard.

9.  A company organized to quarry and sell granite issued bonds and gave a mortgage or deed of trust to a trustee to secure them.   After describing certain land, the description of the property proceeded: "And generally all and singular its real and personal property (except quarried granite in process of preparation for market), apparatus, fixtures, machinery, engines, boilers, steam-drills, rock-crushers, tools, and equipments of every kind and description whatsoever, and wherever situated, which are now held or may be hereafter acquired by said party of first part, together with all and singular the privileges and appurtenances, and the rents, issues, profits, income, and rights belonging to or growing out of and appertaining to said property, including two hundred and forty-three shares of the capital stock of Georgia Granite Railroad Company."   Two or three years thereafter the granite company obtained certain negotiable bonds of the railroad company, transferable by delivery (as found by the auditor), which it later pledged as security for an indebtedness, and which ultimately found their way into the hands of innocent purchasers for value and without notice of any defect in them, if there was any.   The trustee for the bondholders of the granite company never had possession of them.   *Held*, that the use of the words, "which are now held or may be hereafter acquired," in the above-quoted description, did not transfer to the trustee for the bondholders of the granite company the title to such bonds of the railroad company, so as to affect the title acquired by the subsequent bona fide purchasers for value.   See, in this connection, 4 Cook on Corporations (7th ed.), § 852; 23 Am. & Eng. Enc. Law (2d ed.), 808, 809; Smith *v.* McCullough, 104 U. S. 25 (26 L. ed. 637).

10. While possibly there may be slight inaccuracies in some of the findings of the auditor, none of them are of such materiality as to require a reversal of the judgment overruling all the exceptions of law and of fact to such report. The evidence was sufficient to authorize the presiding judge, in the use of a sound discretion, to overrule the exceptions to the findings of fact (this being an equitable action) ; and there was nothing in the overruling of the exceptions to the findings of law, or in any assignment of error urged before this court, which requires a reversal.

*Judgment affirmed. All the Justices concur, except Atkinson, J., dissenting.*

FEBRUARY 16, 1916.

Exceptions to auditor's report. Before Judge Bell. Fulton superior court. September 12, 1914.

T. C. Miller as trustee under a deed of trust to secure the payment of an issue of bonds of the Georgia Granite Railroad Company, to the amount of fifty thousand dollars, and Venable Brothers as holders of such bonds filed an equitable petition against the railroad company, to foreclose the deed of trust, and to have the property sold to satisfy the bonds. The defendant filed its answer contesting the foreclosure on various grounds. The Georgia Granite Company, another corporation, had issued its bonds and made a deed of trust or mortgage to the Trust Company of Georgia to secure them. In this deed of trust were included 243 shares of the capital stock of the Georgia Granite Railroad Company, of the par value of $24,300, out of a total capitalization of $25,000. Under the terms of the last-mentioned deed of trust, F. M. Farley Jr. succeeded the original trustee. He intervened in the foreclosure proceedings against the railroad company, and set up various reasons why the foreclosure should not be allowed. The case was referred to Shepard Bryan Esq., as auditor, who filed a report, the general effect of which was in favor of the plaintiffs. A motion was made to recommit, on several grounds, which was overruled. The defendants and the intervenor excepted. They also filed exceptions of law and fact to the auditor's report. The presiding judge overruled the exceptions and entered a judgment in favor of the plaintiffs. To the overruling of the motion to recommit, and to the overruling of the exceptions to the auditor's report, the defendant and the intervenor excepted.

The auditor, in connection with his report, filed a general summary of the facts, which sufficiently shows the character of the

case, and, with a few verbal changes, is as follows: The Georgia Granite Company, hereafter called the granite company, a corporation created by and existing under the laws of the State of Georgia, with its principal office in DeKalb county, Georgia, was.the owner of certain granite property located in DeKalb county, Georgia, known as Rock Chapel Mountain, about four miles southeast of the town of Lithonia, through which town runs the main line of the Georgia Railroad. The Georgia Granite Company, on December 1, 1904, executed a deed of trust by authority of its board of directors, by resolution passed November 30, 1904, for the purpose of securing the payment of sixty bonds of one thousand dollars each. The Georgia Granite Company conveyed to the Trust Company of Georgia, a corporation created and existing under the laws of Georgia, with its principal office in the city of Atlanta, certain property, described in the deed of trust, to secure the payment of the said $60,000 of bonds. The deed of trust covered certain real estate therein fully described, being the Rock Chapel property, "with all rights, members, and appurtenances to the aforesaid parcels of land appertaining or belonging, including franchises and rights of way situated on and contiguous to the real estate aforesaid; and generally all and singular its real and personal property (except quarried granite in process of preparation for market), apparatus, fixtures, machinery, engines, boilers, steam-drills, rock-crushers, tools, and equipments of every kind and description whatsoever, and wherever situated, which are now held or may be hereafter acquired by said party of first part, together with all and singular the privileges and appurtenances, and the rents, issues, profits, income, and rights belonging to or growing out of and appertaining to said property, including two hundred and forty-three shares of the capital stock of Georgia Granite Railroad Company." An exact copy of said certificate for 243 shares is as follows:

"Incorporated under the laws of the State of Georgia.
"Number 12.                                243 Shares.
"The Georgia Granite Railroad Company, Atlanta, Georgia.
"This certifies that Trust Company of Georgia, Trustee for bondholders, is the owner of two hundred and forty-three shares of the capital stock of The Georgia Granite Railroad Company, transferable only on the books of the corporation, in person, or by attor-

ney, on surrender of this certificate. In witness whereof, the duly authorized officers of this corporation have hereunto subscribed their names and caused the corporate seal to be hereto affixed at Atlanta, Ga., this 30th day of November, A. D. 1904.

[Signed]   W. H. Patterson Jr., Secty.   W. H. Patterson, Prest."

The Trust Company of Georgia, on August 31st, 1912, resigned its trusteeship under said deed of trust, dated December 1st, 1904, executed by the Georgia Granite Company, and declined to further remain or act as trustee, and on November 2nd, 1912, the Georgia Granite Company appointed F. M. Farley Jr., as trustee under said deed of trust. The deed of trust so executed by said Georgia Granite Company on December 1st, 1904, was duly recorded in the office of the clerk of the superior court of DeKalb county, Georgia, on December 15, 1904. The Georgia Granite Railroad Company, hereinafter called the railroad company, was duly issued a charter under the laws of Georgia, on March 1, 1904, with a capital stock of twenty-five thousand dollars, for the purpose of building a railroad from Lithonia, upon the main line of the Georgia Railroad, to Rock Chapel Mountain, the property owned by the granite company, a distance of about four miles. Thereafter the railroad company was duly organized and did construct a railroad between Rock Chapel Mountain and Lithonia, and the railroad was used for transporting the products of the granite company from Rock Chapel Mountain to Lithonia, during the entire period of the granite company's activity. On March 1, 1907, the railroad company issued $50,000 of first-mortgage 6 per cent. gold bonds, secured by the property of the railroad company, fully described in the deed of trust executed on the same date. These bonds were registered, as required by law, in the office of the Secretary of State on January 28, 1908, and were shown in the railroad company's tax returns made to the comptroller-general for the years 1908, 1909, 1910, 1911, and 1912. The railroad company by the deed of trust conveyed its property to the Central Bank and Trust Corporation, a corporation created by and existing under the laws of Georgia, with its principal office in the city of Atlanta, Georgia, as trustee. The deed of trust conveyed the railroad company's approximately four miles of railroad with its rolling-stock and other property set out in said deed of trust, and also included "similar property, whether legal or equitable, now belonging to

said railroad company, or to which it may be now or hereafter in any way entitled; also revenue, rents, and income derived therefrom, with all rights, members, and appurtenances to said property, or any part thereof, used in connection with said railroad, or in any manner now belonging to it, or which shall hereafter belong to it." The deed of trust provided further that "in case default shall be made in payment of principal or interest due on said bonds, or upon non-compliance with any of the agreements herein set forth, and such default continues for three months, the said trustee or its successors, by its attorney or agent, may sell and dispose of all of said property covered by this mortgage at public auction, to the highest bidder, at such time and place in the City of Atlanta and State of Georgia as it may designate," etc. It was further provided in the deed of trust as follows: "This provision [referring to the above-quoted provision] is cumulative to all legal remedies of foreclosure in the courts, and shall not be obligatory upon the trustee except upon request of the holders of a majority of said bonds, in writing, accompanied by suitable indemnity to the trustee against all liability in the premises." The deed of trust further provided, on the subject of default, as follows: "In case default shall be made in any of the provisions and conditions of said bonds, or of this deed, and such default continues for three months, the trustee may, upon application of the holders of one third of the amount of said bonds at the time outstanding, or, in its discretion, without such request, demand foreclosure or any other appropriate proceedings in any proper court for the enforcement of the security created hereby. Before [Upon] such request, and a reasonable indemnity to the trustee, the trustee shall proceed to enforce the remedies given by this conveyance, in any proper court, and, upon application, shall be entitled to the appointment of a receiver for all of the property covered hereby, upon ex parte application therefor, as is usual in such cases." On August 10, 1912, T. C. Miller was appointed as trustee under said deed of trust, to succeed the Central Bank and Trust Corporation as trustee. The deed of trust recited, that a special meeting of the stockholders of the railroad company, duly called for the purpose, was held on the 28th day of February, 1907, notice whereof was duly published as required by law; that at said meeting a majority of all the capital stock of the company was represented by

the lawful holders thereof, in person or by proxy; and that the stockholders, by unanimous vote, authorized and instructed the board of directors to issue, over the signatures of the president and treasurer and the seal of the company, first mortgage 6 per cent. gold bonds, amounting to $50,000. This deed of trust was signed, "Georgia Granite Railroad Company, By W. H. Patterson, Prest.," and "Central Bank & Trust Corporation, By Asa G. Candler, Prest." It was duly filed and recorded in the office of the clerk of the superior court of DeKalb county, Georgia. All of said bonds were payable to bearer; none of them were registered on the books of the company, although they were registerable. All of the bonds were alike, and an exact copy of bond number 50 is as follows:

"Georgia Granite Railroad Company. First Mortgage Six Per Cent. Gold Bond. For value received, the Georgia Granite Railroad Company, a corporation duly organized under the laws of the State of Georgia, promises to pay to the bearer hereof, or, in case of registration, to the registered holders hereof, or order, the sum of One Thousand ($1,000.00) Dollars, in gold coin of the United States of the present standard of weight and fineness, on the first day of March, A. D. 1937, at the office of the Central Bank and Trust Corporation, in the City of Atlanta, Georgia, with interest thereon at the rate of six per cent. per annum, payable semi-annually, in like funds, and at same place on the first days of March and September of each year, on presentation and surrender of the coupons hereto annexed as they severally become due. This bond is one of a series of fifty (50) bonds of one thousand (1000) dollars each, numbered from one (1) to fifty (50) inclusive, making a total issue of fifty thousand (50,000.00) dollars, secured by a first mortgage, bearing even date herewith, on the property and franchises of said railroad company now owned or hereafter to be acquired, subject to the provisions in said mortgage contained. If default shall be made in any of the payments of interest on this bond, as and when they mature, and such default continues for three (3) months, the principal of said bonds shall thereupon become due and payable in the manner and with the effect specified in the said mortgage. If desired, this bond may be registered on the Railroad Company's books at its office in the City of Atlanta, Georgia, and may be discharged from register and made transferable bv delivery, as is usual in such cases. The registry of this

bond shall not impair the negotiability of the coupons by delivery. This bond shall not become valid until authenticated by the certificate endorsed hereon and signed by the trustee. In witness whereof, the Georgia Granite Railroad Company has caused its corporate seal to be affixed, and this bond to be signed by its President and Treasurer, this the first day of March, 1907.

> "Georgia Granite Railroad Company,
> By W. H. Patterson, President.

"W. H. Patterson Jr., Treasurer."

Attached to each bond were sixty coupons for $30 each, which were alike except as to date. An exact copy of coupon No. 8, attached to bond No. 50, is as follows:

"$30.00. The Georgia Granite Railroad Company will pay to the bearer hereof, at the office of the Central Bank and Trust Corporation, in the City of Atlanta, Georgia, thirty ($30.00) dollars in gold coin of the United States, on March the 1st, 1911, being six months interest due that day on its six per cent. first mortgage bond for one thousand dollars.

> "W. H. Patterson Jr., Treasurer."

On January 19th, 1911, the Georgia Granite Company, by W. H. Patterson Jr., vice-president and general manager, executed its note for $13,000 payable ninety days after date, in favor of the Central Bank and Trust Corporation, and deposited with the Central Bank and Trust Corporation, as general collateral security for the payment of said note, and any and all other liability, direct or indirect, joint or several, of the Georgia Granite Company to the Central Bank and Trust Corporation, already existing or thereafter to arise, and whether due or not due, fifty first-mortgage bonds of the Georgia Granite Railroad Company, numbered from one to fifty inclusive, each for one thousand dollars par value,—being the same fifty thousand dollars of bonds secured by the deed of trust executed by the Georgia Granite Railroad Company on March 1st, 1907. Credits appeared on the back of this note, to the amount of $3,000 and interest; also the following endorsements:

"April 25th, 1912. For value received, and without recourse, we hereby transfer the within note and collateral to the American National Bank, Atlanta, Ga. Central Bank and Trust Corporation, by W. D. Owens, Cashier."

"April 27th, 1912.   For value received, and without recourse, we hereby transfer the within note and collateral to Venable Brothers.   The American National Bank of Atlanta.   J. B. Windsor, Asst. Cashier."

On February 13th, 1911, the Georgia Granite Company, by W. H. Patterson, president, had executed and delivered to the American National Bank of Atlanta, Georgia, a paper reading as follows:

"In consideration of ten ($10.00) dollars in hand paid by the American National Bank of Atlanta, the receipt of which is hereby acknowledged, and to secure a line of credit from said bank to the Georgia Granite Company, the Georgia Granite Company does by this instrument transfer and assign to the American National Bank of Atlanta all its rights, title, and interest in and to the total issue of fifty thousand ($50,000.00) dollars of bonds of the Georgia Granite Railroad Company, covering the four miles of railroad from Lithonia, Georgia, to the quarries of the said Georgia Granite Company, subject only to the prior claims of the Central Bank & Trust Corporation on said issue of bonds by virtue of their hypothecation previously hereto, to secure an indebtedness of said Georgia Granite Company to said Central Bank and Trust Corporation, aggregating thirteen thousand dollars principal. This assignment of equity of the Georgia Granite Company in and to said bonds is made as collateral security for the indebtedness of the Georgia Granite Company to said American National Bank of Atlanta, as evidenced by its promissory notes for the time being outstanding, and representing a line of credit extended it by the American National Bank in the aggregate sum of $16,750.00 principal. In testimony whereof the Georgia Granite Company has executed this instrument by its president, on this 13th day of February, 1911.

"Georgia Granite Company, by W. H. Patterson, President."

On April 27, 1912, the American National Bank, by Robert F. Maddox, its vice-president, endorsed on said paper the following words: "April 27, 1912.   Having this day sold to Venable Brothers certain notes of the Georgia Granite Company, we hereby assign all our rights to the above collateral."   On April 26, 1912, (as found by the auditor) a contract was entered into between Venable Brothers and the Georgia Granite Company by W. H. Patterson, president, a copy of which is as follows:

· "The Georgia Granite Railroad Co. sells to Venable Brothers $50,000.00 of first mortgage bonds. The Georgia Granite Company sells to Venable Brothers the Weaver property, and also the Yellow River Power property, and agrees to assume the first mortgage and the bonds of the Georgia Granite Railroad Company, and agrees to pay the interest on the bonds, monthly in advance, in the amount of $250.00 per month, and to maintain the track and rolling-stock of the Georgia Granite Railroad Company, and replace worn-out, broken, or destroyed equipment, and agrees not to build any other railroad, and agrees to furnish all of its traffic to the Georgia Granite Railroad Company. Railroad Company agrees to handle traffic on agreed rates, or as fixed by Railroad Commissioners. The Georgia Granite Company shall issue interest instalment notes for as much as one year in advance, and keep them issued as far as one year in advance whenever called upon to do so. All for and in consideration of notes now held by the American National Bank in the principal sum of $22,300.00 and interest, and note held by the Central Bank & Trust Corporation in the principal sum of $10,000.00 and interest, said notes to be paid, canceled, and delivered to the Georgia. Granite Company. All taxes to be paid on Georgia Granite Company's railroad by Georgia Granite Company. Any debt owing by railroad to granite company to be settled and canceled, and no other debt made by Railroad Co., unless by permission of Venable Brothers. Venable Brothers give option to Railroad Co., and Georgia Granite Company, to purchase all the property herein described, at the sum of the above amounts. Option expires on or before first day of December, 1914. Default of interest for sixty days, taxes, or levy of judgment, filing lien on property, or mortgage foreclosure extinguishes option. Appeal in condemnation case in DeKalb superior court to be dismissed. If Georgia Granite Company avails of option prior to December 1, 1914, they shall pay any past-due interest notes, and the two interest notes next maturing after such repurchase, any additional unmatured interest notes to be canceled by Venable Brothers, or their assigns, and surrendered to Georgia Granite Company. Georgia Granite Co. to have use of the Weaver tract for the growing of forage or pasturing of stock, free of charge. We agree to the above.

"Georgia Granite Company, By W. H. Patterson, Prest.
"Venable Brothers."

*Watkins & Latimer, Simmons & Simmons, Little, Powell, Smith & Goldstein,* and *R. C. & P. H. Alston,* for plaintiffs in error. *James L. Key* and *Reuben R. Arnold,* contra.