# TRASK *v.* JACKSONVILLE, PENSACOLA AND MOBILE RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

Argued January 5, 6, 1888. — Decided February 6, 1888.

On the proof in this case the court holds that Coddington, from whom appellant bought the bonds which form the subject matter of the suit, took them with knowledge of such facts as would prevent him from acquiring any title by purchase which he could enforce, as a *bona fide* holder, against the Florida Central Railroad Company, one of the appellees herein; and that appellant as purchaser of the bonds occupies no better position than Coddington.

BILL IN EQUITY, to collect of the Railroad Companies, defendants, certain bonds of the State of Florida, described in the opinion of the court, which are conceded to be invalid as

against the State. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion of the court.

*Mr. Stephen P. Nash* for appellant. *Mr. D. P. Holland* was with him on the brief.

*Mr. Wayne McVeagh* for appellees. *Mr. A. H. Wintersteen* was with him on the brief.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This suit was brought by Spencer Trask to collect 192 of the 1000 bonds of the State of Florida, issued to the Florida Central Railroad Company, which were the subject of consideration by this court in *Railroad Companies* v. *Schutte*, 103 U. S. 118. In that case it was decided that, although the bonds were void as against the State, the railroad company that sold them was estopped from setting up their invalidity as a defence to an action brought by a *bona fide* holder to enforce the lien the company had given on its property to secure their payment. Accordingly a decree was rendered establishing the lien of the holders of 197 bonds on the railroad of the company, and ordering a sale to pay the amount due thereon. Trask now claims to be a *bona fide* holder of the 192 bonds he sues for, and seeks the same relief as to them. He concedes the invalidity of the bonds so far as the State is concerned, but as against the railroad company and its property claims the benefit of the same estoppel that was adjudged in the other case to exist in favor of those who recovered there.

The general facts as to the issue of the bonds are stated in the case of *Schutte*, beginning at page 127 of the volume in which it is reported (103). The correctness of our findings then is not denied now. Indeed, Trask relies upon that decision as the basis of his right to recover, and the only disputed question is, whether he does in law and in fact occupy the position of a *bona fide* holder. That is substantially a question of fact only, and it presents itself in a double aspect. Trask got his title from Thomas B. Coddington, and the inquiry is, first, as

to his own position separate from that of Coddington, and if that is not sufficient then next as to that of Coddington, under whom he claims.

We have carefully considered the testimony bearing on these questions, both in the record as it has been printed in the present case, and in that of the *Schutte* case brought into this also by stipulation. It would serve no useful purpose to refer to this testimony in detail, and it is sufficient to say that we have had no difficulty in reaching the conclusion that Trask, as a purchaser of the bonds, occupies no better position than Coddington, from whom he bought. His purchase was made September 12, 1881, at an auction sale in the city of New York. The bonds had then been running ten years and more, and no interest had ever been paid upon them. As the sale was made under the agreement of August 29, 1872, Trask is chargeable with notice of the contents of that instrument, which showed on its face that the bonds had been the subject of litigation and had not been obtained by Coddington in the ordinary course of business. His debt, for which they were held, was $40,000, and the bonds, without interest, which had been running ten years at eight per cent per annum, amounted to $192,000. As the bonds were state bonds, the mere fact that no interest had ever been paid furnished the strongest presumptive evidence that they were dishonored. The interest alone, if collected, would much more than pay the debt for which the bonds were held. The circumstances connected with the sale also were entirely inconsistent with the idea of a purchase of commercial paper in good faith for a valuable consideration without notice. No one present at the time could have had any other understanding than that the sale was of bonds which had been commercially dishonored.

We are equally well satisfied that Coddington was never in any commercial sense a *bona fide* holder of the bonds. According to his own testimony he was originally the mere agent of those who were engaged in perpetrating the fraud upon the railroad company, and employed by them to get the bonds from Florida to London, so that they might be sold and a large part of the proceeds applied to the payment of the per-

sonal debts of one of the guilty parties. He undoubtedly did this because he had been told that it would enable "the parties in interest" to pay him the cash for $24,465 of coupons of another company for which they were bound. He entered into no contract with the Florida Central Company, and it could never have been supposed by him that any part of the proceeds were to be paid into its treasury or for its use. He could not but have known that the whole purpose of his employment was to get the bonds to London, where they had been contracted to be sold at a price that would yield less than half their face value, and that he was himself to apply more than half of this to the payment of the individual debts of one of the large stockholders of the company, by whose influence and in whose interest the railroad bonds had been executed to be exchanged for the state bonds, which he was to take away. Under such circumstances, it is certain that he could have acquired no lien on the bonds as security for any services he might render in transferring them to London, or for any liability he had incurred to third parties in order to get the bonds away. His contract for the service, and for the compensation he was to receive, was not with the railroad company itself, but with the president of the Jacksonville, Pensacola and Mobile Railroad Company, who was engaged in appropriating the bonds issued to the Florida Central Company to his own use. This disposes of his claim of lien on account of his services and liabilities as agent. He was not the agent of the Florida Central Railroad Company, and as it must be conceded that those for whom he was acting had no title as against this company, there was nothing in his hands to which any lien could attach in his favor any more than in favor of his principals.

As to the contract made with the Jacksonville, Pensacola and Mobile Company on the 29th of August, 1872, by which the 192 bonds were given to Coddington as security for a debt owing to him by that company, little need be said. The Jacksonville, Pensacola and Mobile Company had no legal right to the bonds, and it could not, therefore, pledge them as security for its debts. All this Coddington knew or ought to

have known.   And besides, when this contract was made the fraud and illegality in the original issue of the bonds, both by the railroad company and the State, had become notorious, and it is impossible that Coddington, situated as he was, could have been ignorant of the facts.   In order to get the bonds away from Florida he was compelled to arrange with certain stockholders of the Florida Central Company, who had begun a suit to prevent their removal by the president of the Jacksonville, Pensacola and Mobile Company, on the ground that he had no right to use the road of the Florida Central Company " and cover it with liens to raise money to pay private debts, notwithstanding he is the owner of a majority of the stock."   It is unnecessary to refer more particularly to the evidence.   It is full and conclusive and leaves no doubt on our minds as to the knowledge of Coddington of such facts as would prevent him from acquiring any title to the bonds he took away by purchasing them from any of the parties engaged in the transaction, which he could enforce as a *bona fide* holder against the Florida Central Company.

*The decree of the Circuit Court is affirmed.*