### 3557. PARK *v.* BUXTON *et al.*

1. The law of this State declares that "any circumstances which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." The character and sufficiency of the circumstances in a particular case which should place a prudent man on his guard are to be determined as questions of fact by the jury, and not by the judge as questions of law.

2. The promise to pay the interest on a negotiable note is as much a part of the contract as the promise to pay the principal. Principal and interest constitute one debt. When the note is sold to a third person before the principal is due, but when installments of interest are past due, and remain unpaid, and the fact of non-payment appears on the face of the note or is actually known to the purchaser, it is for the jury to determine whether these facts were circumstances sufficient to put the purchaser, as a prudent man, on his guard and to furnish to him warning that the maker of the note had some defense. Proof of these facts authorizes the jury to find that the purchaser bought the note with notice that it was then dishonored; and he would not be protected in his title against any defense that the maker could make if the note were sued on by the original payee.

3. There was evidence to support the plea of total failure of the consideration for which the note was given, and no reason appears for the grant of another trial.

DECIDED JANUARY 15, 1912.

Complaint; from city court of Waynesboro—Judge Boykin presiding. June 16, 1911.

*H. J. Fullbright, F. S. Burney,* for plaintiff.

*William H. Fleming, C. B. Garlick,* for defendant.

HILL, C. J. Howard C. Park sued W. R. Buxton and others as makers of a promissory note, alleging, that he was a bona fide holder for value, that he bought the note before it was due and without any notice of any defect or defense. The defendants denied these allegations, and on the issue thus formed and the evidence, under the charge of the court, the jury found a verdict in favor of the defendants, and the plaintiff's motion for a new trial was overruled. The evidence, briefly stated, is as follows: The note was one of three notes for $1,000 each, payable to McLaughlin Brothers, or order, and dated April 8, 1906, the first note falling due May 1, 1907, the second in 1908, and the third in 1909. The consideration of the notes was a high-bred stallion, purchased under express warranties as to the quality of the stallion, and the defense relied upon was a breach of these warranties. This de-

fense was met by the contention of the plaintiff that as he was a bona fide purchaser for value before maturity, without notice of any defect or defense, this defense of failure of consideration could not be made to the note in his hands. There was a credit of $200 on the principal of the note, leaving a balance of $800 due. The plaintiff paid $850 for the note to McLaughlin Brothers, the original payees, and at the time of the purchase the principal of the note had not matured, but would have matured in twelve days. Two installments of annual interest, amounting to $96 at the time of the purchase, were past due and unpaid. The face of the note did not show this fact, but the plaintiff admitted that he knew the fact when he purchased the note.

The principal question of law presented is: Does the purchaser for value of a negotiable promissory note before the principal thereof is due, with knowledge that installments of interest thereon are past due and unpaid, stand in the position of a bona fide holder, and is he protected as such under section 4286 of the Civil Code (.1910); or does the fact that installments of interest are past due, and his knowledge of the fact, constitute sufficient reason to dishonor the principal of the note and let in all defenses good against the original payee? The plaintiff in error insists that, as a matter of law, the simple fact that installments of interest are overdue and unpaid, disconnected from other facts, is not of itself sufficient to affect the position of one taking the note before maturity of the principal for value, as a bona fide purchaser, and that it was the duty of the trial judge so to instruct the jury. The trial judge refused so to instruct the jury as a matter of law, but submitted the question to them as one of fact, charging to the effect that it was for the jury to decide whether the non-payment of the interest and the knowledge of that fact by the plaintiff at the time he purchased the note was a circumstance which would place a prudent man upon his guard in purchasing negotiable paper.

. The question of law here presented has never been directly decided by the Supreme Court of this State, and the decisions in other jurisdictions are in conflict. Some of the decisions holding that default in the payment of interest, with a knowledge of that fact by the purchaser, does not dishonor the note and is not a sufficient circumstance of suspicion to put the purchaser upon further inquiry, are Indiana & Ill. Ry. Co. v. Sprague, 103 U. S. 756 (26

L. ed. 554) ; Cromwell *v.* Sac County, 96 U. S. 51 (24 L. ed. 681) ; Thomason *v.* Perrine, 103 U. S. 589 (1 Sup. Ct. 564, 568, 27 L. ed. 298) ; Nat. Bank *v.* Kirby, 108 Mass. 497; Kelly *v.* Whitney, 45 Wis. 110 (30 Am. R. 697) ; and some of those taking the opposite view are Newell *v.* Gregg, 51 Barb. (N. Y.) 263; Citizens Savings Bank *v.* Couse, 124 N. Y. Supp. 79 (68 Misc. Rep. 153) ; First Nat. Bank *v.* Forsyth, 67 Minn. 257 (69 N. W. 909, 64 Am. St. R. 415). The United States Supreme Court, in the case of Trask *v.* Jacksonville, Pensacola & Mobile R. Co., 124 U. S. 515 (8 Sup. Ct. 574, 31 L. ed. 521), in seeming conflict with prior decisions on the same subject, holds, that where interest coupons attached to bonds of the State had not been paid for ten years, this fact furnished the strongest presumptive evidence of dishonor. The court in this latter case seemed to attach significance to the fact that so many of the interest coupons were unpaid, and the fact that the bonds were issued by the State; and the peculiar facts of the case seem to have made the conflict between this decision and prior decisions more apparent than real. As illustrating the conflict in the decisions of the courts on this subject, it may be noted that those courts which hold that the mere fact of default in the payment of interest is not of itself sufficient to dishonor the note and to put the purchaser on notice and destroy his character as a bona fide holder, repudiate the doctrine that as to negotiable paper mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is sufficient to impair the title of the purchaser, and hold that this result would follow only where there had been bad faith on his part. See Murray *v.* Lardner, 2 Wall. 110 (17 L. ed. 857), where the leading authorities on this subject are collated and considered. The doctrine, however, that the purchaser of such paper, under circumstances of suspicion calculated to put a prudent man upon inquiry, does so at his risk, seems to be the rule in this State. The Civil Code (1910), § 4291, provides that "Any circumstances which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." What would be sufficient to place a prudent man upon his guard in purchasing negotiable paper is necessarily a question of fact. It can not in any case be a question of law. In this State the trial

judge can not instruct the jury what a prudent man should do, or would do, under certain circumstances; for, as Chief Justice Bleckley says in the case of *R. & D. R. Co.* v. *Howard*, 79 *Ga.* 53, "in legal contemplation the jury know it better than the court." Looking at the question abstractly, it would seem that negotiable paper is dishonored by any breach of the engagement which it imports, and that any fact which would tend to show that the paper was disgraced would destroy its character of negotiability. In other words, if there is upon the face of the paper anything indicative of dishonor, the purchaser takes it at his peril.

A promise to pay a negotiable promissory note applies to the interest as well as to the principal. There is but the one promise, and the interest is just as much a part of the debt as the principal, and the obligation to pay the interest is as strong as the obligation to pay the principal, and a failure to pay the interest would indicate that the promisor had broken his promise and had dishonored and destroyed the negotiable character of the obligation; or, as otherwise expressed, anything that dishonors any part of a note dishonors the whole note. The failure to pay one installment of interest would be a circumstance of suspicion, the suspicion growing stronger as defaults were made in the payment of successive installments. "Where a note is for the payment of money at a specified time, with interest payable annually, the payment of interest annually is as much a part of the agreement as a promise to pay the principal. It is a portion of the debt, and if, when the note is sold to a third person by the payee, a year's interest is past due, the note is then dishonored. When the instrument furnishes evidence that the written promise to pay has been dishonored, a party taking the same takes it with the warning that the maker may have some defense; and no one can become a bona fide holder of a promissory note so as to shut out a valid defense of the maker, if the holder takes it when money is past due upon it." The above is the language of the Supreme Court of New York in the case of Newell *v.* Gregg, supra, and, in our opinion, expresses the sound rule on the subject. Section 4291 of the Civil Code (1910) immediately follows those sections of the code which declare the rights of bona fide holders of negotiable paper, and was intended unquestionably as a qualification of these rights; and we therefore conclude that the trial judge in the present case properly instructed the jury

that it was a question for them to determine, under the evidence, whether the failure to pay the interest on the note was a circumstance which would place a prudent man upon his guard in purchasing the note; and if they concluded that it was a sufficient circumstance, then the holder of the note would not be a bona fide purchaser, and the maker thereof would be let in to all of the defenses which he would have had to the note, if in the hands of the original payee. If the circumstance of default in the interest due for two years was in the present case sufficient to put the plaintiff, as a prudent man, on his guard in the purchase of this note, then it was also sufficient to put him on inquiry, and he is bound in law and in equity by any knowledge or information that he might have acquired in pursuance of reasonable inquiry on the subject. The jury were authorized to infer from the evidence that upon reasonable inquiry the purchaser of this note would have found out the defenses which the makers had to its payment, to wit, that the consideration of the note had totally failed. There was evidence to establish this defense.

The exceptions other than those indicated above are immaterial. The question which we have discussed is controlling, and, in the view that we have taken of the law, we fail to find any error, and, therefore, affirm the judgment refusing a new trial.

*Judgment affirmed.*