## 15554. BANK OF COMMERCE v. KNOWLES et al.

1. The inability of the vendor of land to make title according to his contract will give the vendee a cause of action for a breach of the contract, and justify him in refusing to make payments of the purchase price and in asserting a want or failure of consideration, as to any notes executed therefor in the hands of a holder with notice.

2. Any circumstance which would place a prudent man upon his guard, in purchasing negotiable paper, is sufficient to constitute notice to a purchaser of such paper before it is due.

(a) But notice to the holder of a note, at the time he acquired it from the payee, that it was given for the purchase price of lands which the payee had contracted to sell to the makers, and that the payee was not at that time the owner of the lands in fee simple, but held them merely by virtue of a bond for title, would not, without more, be sufficient to place the holder, as a prudent person, upon his guard in purchasing the paper.

(b) The holder of a note is presumed to be such bona fide and for value; if either fact is negatived by proof, the defendants are let into all their defenses. Neither fact was negatived by the evidence in this case.

(c) The verdict found in favor of the defendants was, therefore, unauthorized.

3. There being no evidence that the plaintiff acquired the note sued on with notice of the defense asserted, certain parts of the charge of the court, excepted to in the motion for a new trial, were unwarranted by evidence. For the reasons stated in this and the preceding paragraph, and the corresponding divisions of the opinion, the court erred in overruling the plaintiff's motion for a new trial.

DECIDED OCTOBER 18, 1921.

Complaint; from Floyd superior court—Judge Wright. April 10, 1924.

*Porter & Mebane, Denny & Wright,* for plaintiff.

*Maddox, Matthews & Owens,* for defendants.

BELL, J. This was an action by the Bank of Commerce of Summerville against the makers, F. M. Formby and W. A. Knowles, upon a promissory note payable to and indorsed by W. B. Medlin. The defendants pleaded want and failure of consideration, alleging in substance that the note was one of a series which the defendants were to execute to the payee for the purchase price of certain lands, in pursuance of the sale of which the payee, Medlin, had signed a bond for title and the defendants had signed the note sued on and others; that before the transaction was closed, however, a mistake in the amounts of the other notes had been discovered, and that the transaction by agreement was to be held in abeyance until the mistake could be corrected; that in the meantime the note sued

on remained in the possession of the payee, though not subject to negotiation; that pending this agreement, the defendants discovered that the payee had no title to the property and was so involved that he would never be able to make title in accordance with the bond, and that for this reason the corrections in the other notes were never made and the contract of sale was never completed. In regard to the inability of the payee to comply with his agreement to sell, it was set up, among other things, that he himself had never owned the lands except as the obligee in a bond for title; that he had executed and delivered a mortgage upon the property to one person, and in addition had transferred and assigned to some other person his bond for title. The defendants further alleged that the payee nevertheless violated his agreement not to transfer the note, and that the plaintiff acquired it with notice of the facts. A verdict was found in favor of the defendants, and the bank has excepted to the overruling of its motion for a new trial.

1. The inability of a vendor of land to make title according to his contract will give the vendee a cause of action for a breach of the contract, and justify him in refusing to make payments of the purchase price, and in asserting a want or failure of consideration when sued by the vendor or a holder with notice upon any notes executed therefor. *Lightfoot* v. *Brower,* 133 *Ga.* 766 (1), 767 (66 S. E. 1094). The vendee has the right to rely upon the contract obligation of the vendor and demand compliance with the contract, although the vendee knew or ought to have known that the vendor did not own the title at the time the contract was entered into. *Foute* v. *Elder,* 109 *Ga.* 713 (2) (35 S. E. 118); *Smith* v. *Eason,* 46 *Ga.* 316 (2). There is possibly an exception to this rule where the title is in the vendor's wife and the vendee has knowledge of that fact. *McMillan* v. *Wilcox,* 12 *Ga. App.* 721 (78 S. E. 270). We can see no reason for this exception, however, unless it is because of the provision of the code that "no contract of sale by a wife as to her separate estate with her husband . . shall be valid, unless the same is allowed by order of the superior court." Civil Code (1910), § 3009. It may be true that in such case the vendee should know that the ability of the vendor to execute title might be impossible. "Impossible, immoral, and illegal conditions are void, and are binding upon no one." Civil Code (1910), § 4225. It is

unnecessary, however, for the purpose of this case, to determine the soundness of the decision in *McMillan* v. *Wilcox*, supra.

If the purchaser seeks to recover damages for an alleged breach of a contract for the sale of lands, the general rule is that he must tender payment, unless it is waived. *Smith* v. *Tatum*, 140 *Ga.* 719 (2) (79 S. E. 775). But such tender is unnecessary where it is shown that it would have been useless. *Pearson* v. *Horne*, 139 *Ga.* 453 (3) (77 S. E. 387) ; *Burkhalter* v. *Roach*, 142 *Ga.* 344 (2) (82 S. E. 1059) ; *Turman* v. *Smarr*, 145 *Ga.* 312 (2) (89 S. E. 214).

Without setting it forth, there was some evidence in this case to authorize a finding in favor of the defendants' contentions that the vendor, who was the payee of the note sued on, not only did not have title to the property contracted to be sold, but also that he was so involved that he never would have been able to acquire title or to place himself in a situation where he could comply with his contract.

2. We think, however, that there was no sufficient proof that the bank took with notice that the consideration had failed or would necessarily fail. In *Adams* v. *Hatfield*, 17 *Ga. App.* 680 (2) (87 S. E. 1099), this court said that failure of consideration may be pleaded "where the holder of the note, when he purchased it, knew what the consideration was, and had notice, express or implied, that it probably would fail." We held in *Prater* v. *Baughman*, 24 *Ga. App.* 298 (100 S. E. 647), that the indorsee of a note based upon an executory consideration is protected against a plea of failure of consideration, where he "had no notice, constructive or otherwise, that the consideration would fail." And in *Reece* v. *Citizens Bank of Roswell*, 22 *Ga. App.* 519 (96 S. E. 452), the rule was laid down that in such a case "the question is not whether the circumstances were such as might reasonably put the indorsee upon notice that the consideration could fail, but whether they were sufficient to put him on notice [that] it must fail or actually had failed." These decisions, while differing in the language used, are each declaratory of the same principle.

Whether then known to any one, it must have been true at the time the plaintiff took the note that the consideration would necessarily fail; else the defense could never have accrued.

The probability that the consideration would fail, as referred to in *Adams* v. *Hatfield*, supra, is not an ingredient of the ultimate de-

fense, but rather of the notice the holder must have had when he purchased. The true rule in this State is: "Any circumstances which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." Civil Code (1910), § 4291; *Phillips* v. *Loyd*, 83 *Ga.* 536 (1) (10 S. E. 232); *Fidelity Trust Co.* v. *Mays*, 142 *Ga.* 821 (1) (83 S. E. 961). As said in the case last cited, it is analogous to the equitable rule that notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found that such inquiry might have led. Civil Code (1910), § 4530. The decisions of our courts as to what is sufficient to put a purchaser of negotiable paper upon notice of the equities or defenses between the original parties are but applications of the principles of these two code-sections, though the expressions may not be always the same in the different cases. *Claflin* v. *Duncan*, 74 *Ga.* 348; *Montgomery* v. *Hunt*, 93 *Ga.* 438 (21 S. E. 59); *Montgomery* v. *Hunt*, 99 *Ga.* 499 (4) (27 S. E. 701); 108 *Ga.* 240; *Hudson* v. *Best*, 104 *Ga.* 131 (3) (30 S. E. 688); *Spiller-Beall Co.* v. *Hirsch*, 18 *Ga. App.* 450 (8) (89 S. E. 587); *State Banking Co.* v. *Morgan*, 30 *Ga. App.* 430 (118 S. E. 415). See also the cases cited above in this division of the opinion.

The plaintiff bank purchased the note through its cashier, Mr. Bitting. The defendant Knowles testified as follows: "When I was there three days after the sale I saw Mr. Bitting. I had been in conversation with Mr. Shropshire at his office, and, as I came from his office over to Cleghorn's store, I met Mr. Bitting about half way, and Mr. Bitting says, 'How are you getting on with this trade of Medlin's; have you got the papers fixed up in it?' And I says, 'No, we haven't got the papers fixed up, and it looks like he is not going to be able to fix them up.' I says, 'Dr. Medlin is thoroughly involved and Mr. Shropshire is working on it now.' I told him I had found that Medlin owed near about all the property was worth, and only held the bond for title, and hadn't produced that, hadn't produced the bond for title, but I understood he held the bond for title. . . I never did talk with Mr. Bitting any other time except the time I mentioned between the Cleghorn store and the court-house. I don't think I had any conversation with him except that one conversation before the suit was brought, and I stated all that was said that day. . . He spoke to me about

this matter. He didn't say anything about having bought this note. It wasn't mentioned; it was only two or three days after the sale. I told him that day that it looked like Medlin had no title and the sale would fall through. I never told him that before. I never had any conversation with him before. I didn't tell him anything the day of the sale." Another witness testified that the plaintiff's cashier Bitting knew that Medlin only held a bond for title. Except as stated, there was no other proof that the bank had any notice, when it acquired the note, that the consideration had failed or would fail.

Notice merely that the vendor did not have title, but claimed only by a bond for title, was not sufficient to put the bank, as a prudent person, upon its guard. This, without more, did not foreshadow as a probability that the vendor would breach his contract by failing to acquire title at the time it should be conveyed, or that he would not be able, within the period of the contract, to cause the title to be conveyed to the purchasers. This identical question was decided in *Prater* v. *Baughman*, supra, as is shown by the facts in the record of file.

It is common knowledge that many persons execute contracts in the form of bonds for title and otherwise, obligating themselves to convey titles to land upon the payment of the purchase price in the future, when they do not at the time hold the property in fee simple, but expect to acquire it on or before the maturity of the sale contract. The presumption would be that such a contract would be carried out in good faith, and the consideration for notes given for the purchase price would be performed by the conveyance of title as stipulated, and a purchaser of such a note would have the right to rely upon such expectation if he had no other notice except that the vendor,—the payee in the note—was a holder merely under a bond for title. See Seigel *v.* Chicago Trust & Savings, Bank (Ill.), 7 L. R. A. 537; Miller *v.* Ottaway (Mich.), 8 L. R. A. 428. See also 3 R. C. L. 1067, § 273.

In the case at bar the plaintiff's cashier was informed by Knowles, one of the defendants, "that it looked like Medlin had no title and the sale would fall through." If this had been all of the evidence upon the question of notice, and there was nothing to place the bank *off its guard,* a jury would probably have been authorized to find that the bank, in later purchasing the note, took it with notice

and subject to any defense existing in favor of the defendants against the original payee. See *Hudson* v. *Best,* 104 *Ga.* 131 (3) (30 S. E. 688).

The note in question was dated September 29, 1920. That was the day of the sale, which was at auction. The conversation between Knowles and Bitting, the cashier, took place about three days thereafter. The bank acquired the note for value some twelve to fifteen days later. It was due January 1, 1921. If Knowles had imparted to Bitting the information that this note had been executed and was in the possession of Medlin, but that the completion of the transaction was in abeyance, this with the other facts testified to by him would have presented an entirely different situation. Whether in these circumstances the bank might have been charged with notice is clearly not a question for decision under the record. Bitting was merely told that the papers had not been fixed up, and that it looked like Medlin was not "going to be able to fix them up." This note "was not mentioned." When Medlin thereafter produced the note at the bank and offered to negotiate it, the cashier was authorized to assume that the conditions discussed with Knowles no longer existed, that the papers had been subsequently "fixed up," and that the transaction with reference to the contract of sale had been satisfactorily closed. The fact that the note bore date prior to the conversation between Knowles and Bitting does not alter the case, because Bitting, as a prudent person, was warranted also in assuming either that the note had been antedated to correspond with the actual day of the sale, or that, if signed upon the day of its date, it was delivered subsequently to the conversation referred to, upon a satisfactory adjustment of the differences between Medlin and the defendants. Thus, while a part of the information received by Bitting from Knowles would probably have been sufficient, if standing alone, to charge the bank with notice, or to place the bank, as a prudent person, upon its guard, it was not so when considered with the further statements by Knowles in the same connection that the papers had not been "fixed up." The statements last referred to tended equally to put the bank *off its guard* as to the note later offered for negotiation.

We conclude that the evidence did not authorize the inference that the bank, in purchasing the note, had notice of the defense asserted. The holder of a note is presumed to be such bona fide

and for value. If either fact is negatived by proof, the defendants are let in to their defenses. Civil Code (1910), § 4288. Neither fact was negatived in this case, and the verdict found for the defendants was without evidence to support it.

3. In view of what is said above, it is unnecessary to discuss in detail the several grounds of the amended motion for a new trial. The 1st, 2d, 3d and 4th grounds of the amendment thereto were but amplifications of the general grounds. We hold that the defendants failed to establish their defense solely for the reasons stated in the preceding division of this opinion. Grounds 5 and 6 assign error upon certain parts of the charge of the court, submitting to the jury the question of notice. These instructions were in accordance with the code and the decisions upon that subject, and were not erroneous for any reason assigned, except that they were unwarranted by the evidence. These assignments are sustained. There was no error hurtful to the plaintiff in either of the charges excepted to in the two remaining grounds of the motion. The court erred in overruling the plaintiff's motion for a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

---

### RULE OF THE COURT OF APPEALS.

RULE 5, AS AMENDED AND EFFECTIVE NOVEMBER 13, 1924.

Rule 5. *Argument.* Argument is limited in felony cases and in civil cases where the amount involved exceeds $1,000 to one hour on each side, and in all other cases to thirty minutes on each side, unless by special leave an extension of time is granted by the court on specific application made before the argument of the case is begun. Save when section 6196 of the Code applies, only two counsel on each side will be heard. The plaintiff in error opens and concludes; and on motions the movant has the like privilege. The reading from authorities cited on the brief, while not absolutely prohibited, is usually unnecessary, and is therefore discouraged.

For Rules of Court as originally adopted, and amendments, see 1 *Ga. App.* x; 5 *Ga. App.* 878; 7 *Ga. App.* 856; 18 *Ga. App.* 793; 21 *Ga. App.* 826.