30752. COLEMAN *v.* WOODLAND HILLS COMPANY *et al.*

DECIDED FEBRUARY 8, 1945.

*H. A. Etheridge,* for plaintiff.
*Richard T. Nesbitt,* for defendants.

SUTTON, P. J. Laurene Kerr Coleman brought suit against Woodland Hills Company, a corporation of Fulton County, Georgia, and J. A. Mahoney for damages in the sum of $700, on an alleged breach of contract, and $200 attorney fees, on the ground that "defendant" had been stubbornly litigious. The defendants filed separate general demurrers to the petition. The court sustained the demurrers and dismissed the action, and the plaintiff excepted.

The petition alleged substantially as follows: That Woodland Hills Company "back in the 1920's" put on the market for sale certain building lots described in a recorded plat; that in 1926 or 1927 the petitioner's sister, Mrs. Harriet Kerr Camp, purchased from the defendant company lot No. 1 of block 1 of said plat (described by metes and bounds in the petition); that the purchase-price of the lot was $700, and that Mrs. Camp paid $75 in cash and gave monthly notes of $15 each for the balance; that shortly after contracting for the lot Mrs. Camp "transferred her purchase" to the plaintiff, who assumed and paid the balance of the purchase-money; that at the date of the purchase, J. A. Mahoney, one of the defendants, was president of the corporation, and E. C. Calloway was chairman of the board, and was in charge of the office; that all payments on the lot were made in the office of the company, until the corporation became involved in litigation, when petitioner was told that all future payments must be made to Fulton National Bank, of Atlanta, which through foreclosure proceedings had taken charge of certain assets of Woodland Hills Company; that the balance of the purchase-money was $280, which petitioner placed with her attorney with instructions to him to pay the same and to secure a deed to the lot described; that her attorney made tender of the purchase-money and was told by the party to whom tender was made that the litigation had not then

advanced to the point where the money could be received and deed made (it is not alleged to whom tender was made); that sometime (the date is not alleged) thereafter the money was received and the purchase-money notes delivered to petitioner's attorney, who was advised that Fulton National Bank had foreclosed upon the property of Woodland Hills Company and had bought in the same at sheriff's sale, and that one Clarence E. Mason, of New York, had paid the bank's debt, and that the bank had conveyed all the foreclosed property to Mason, and that Mason would make a deed to the lot which petitioner had bought; that her attorney prepared the deed which Mason signed, and the deed was duly recorded (no date of recordation being given); that in August, 1942, petitioner received a letter from Mahoney's attorney, advising her that Mahoney claimed to own the lot in question, the claim being based on the alleged fact that Mahoney is now the owner of all the stock of the company, and had bought from Mason all interest the latter had acquired under the deed from the bank and that inasmuch as the courthouse records do not show that the lot in question had been conveyed by Woodland Hills Company to anyone, Mahoney is now the owner of all the stock and assets of the company and the owner of the lot; that after the foreclosure, Fulton National Bank made a warranty deed, properly recorded, conveying to Mason "an undivided three fourths and to J. A. Mahoney the remaining undivided one fourth" in certain real estate—being the property bought by the bank at the sheriff's sale—and reciting: "This conveyance includes lot 1 in block 1 . . which was conveyed on the 10th of March, 1930, to said Clarence E. Mason and J. A. Mahoney, and this deed is made to include said lot No. 1 in block 1 in order to make uniform this conveyance with the conveyance of the sheriff above referred to;" that E. C. Calloway was an officer of Fulton National Bank and also an officer of Woodland Hills Company, "when it was a going concern," and that Calloway procured said bank to make a $10,000 loan to Woodland Hills Company upon the company's note indorsed by Calloway and Mahoney, president; that pending the loan Calloway went into bankruptcy and the bank took a mortgage to certain real estate of Woodland Hills Company, and the mortgage was the basis of said foreclosure; that the petitioner's purchase-money notes were up as additional collateral with the bank, but no deed in escrow accom-

panied them; that apparently it was not discovered that lot No. 1 in block 1 was not included in the mortgage until the making of the deed by the bank to Mason and Mahoney; that in September, 1942, petitioner's attorney called upon Mahoney to investigate the information he had received through Mahoney's attorney that Mahoney claimed lot No. 1 in block 1 for which petitioner had paid $700, and stated: "I have come to see if I can adjust the matter between parties by having my client to buy your fourth interest or getting you to buy her three-fourths;" that defendant said he did not know anything about a one-fourth interest in the lot; that Woodland Hills Company had gone out of business and that he was the sole owner of its stock and assets, and that he, defendant, Mahoney, was advised by his attorney that the courthouse records of Fulton County do not show that lot No. 1 in block 1 was ever conveyed to anyone; and that he claimed the entire interest in the lot and would not take less than $700 for it. The petitioner alleged that the deed from Mason to her was invalid for the reason that Fulton National Bank had never had legal title to same, and the original vendor, Woodland Hills Company, and its president, J. A. Mahoney, who now claims to be its successor and alter ego, having refused to convey said lot, she averred that the original purchase contract had been breached and sued for damages for said breach, the measure of which is alleged to be the $700 purchase-money paid, together with interest on same at 7% per annum since January 1, 1927.

1. It appears from the petition that in 1926 or 1927 Mrs. Harriet Kerr Camp, a sister of the plaintiff, purchased the lot in question from Woodland Hills Company at the price of $700, and that she paid $75 in cash and executed monthly notes in the sum of $15 each for the balance of the purchase-price. Shortly thereafter Mrs. Camp transferred her contract of purchase to the plaintiff, who assumed and over a period of years paid off the balance of the purchase-price for the lot; that Woodland Hills Company, which received the purchase-money for the lot, and J. A. Mahoney, president of Woodland Hills Company, who now claims to own the lot by reason of having acquired all of the stock and assets of the land company, have refused to convey the lot to the plaintiff, and consequently have breached the contract of purchase and sale. "A breach of contract may arise in any one of

three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible." *Cooley* v. *Moss,* 123 *Ga.* 707 (51 S. E. 625). "Where one enters into a contract wherein he agrees to sell and convey a certain parcel of land, and commits a breach of the contract by refusal to perform, or doing that which renders performance on his part impossible, the purchaser can maintain his action for damages for such breach." *Mobley* v. *Lott,* 127 *Ga.* 572 (56 S. E. 637). The vendee in a contract for the sale of land has a right of action against the vendor for damages for a breach of the contract. *Bank of Commerce* v. *Knowles,* 32 *Ga. App.* 800 (124 S. E. 910); *Lightfoot* v. *Brower,* 133 *Ga.* 766 (66 S. E. 1094); *Foute* v. *Elder,* 109 *Ga.* 713 (35 S. E. 118).

2. The petition in an action for damages for a breach of a contract for the sale of land is not subject to general demurrer for failure to allege that the contract was in writing, as it is well-settled law that, when a contract within the statute of frauds is declared on, the court will presume that it was in writing, and no averment to that effect is necessary. *Taliaferro* v. *Smiley,* 112 *Ga.* 62 (37 S. E. 106); *Allen* v. *Powell,* 125 *Ga.* 438 (54 S. E. 137); *Montgomery* v. *Alexander Lumber Co.,* 140 *Ga.* 51 (78 S. E. 413).

3. It is alleged in the petition that Woodland Hills Company is a corporation of Fulton County, Georgia, and that J. A. Mahoney was president of that corporation at the time the contract of purchase and sale of the lot in question was made, and it also appears that he was president of the corporation at and during the time when other transactions referred to in the petition transpired. The plaintiff's action is predicated on the contract of purchase and sale, and she lays her damages for a breach thereof in the amount of the purchase-money paid, together with interest and attorney's fees. It appears from the allegations of the petition that the defendants refused to execute a deed to the lot involved on the theory that the defendant Mahoney was the owner of the lot, as he had acquired all of the stock and assets of the land company and claimed the corporation had gone out of business. But it will also be noted that his claim in this respect, that is, as owner, seems to have originated when his attorney, in August, 1942,

discovered from the records of Fulton County that Woodland Hills Company had never conveyed this particular lot to anyone. He then concluded that he was the owner of the lot and told the plaintiff's attorney that he would not convey it to plaintiff, unless he was paid the sum of $700, the original purchase-price of the lot. So far as the petition shows, Woodland Hills Company is still a corporation. It had made a contract of sale of the lot, which had been transferred to the plaintiff and the plaintiff had paid the purchase-money therefor. "The acquisition of all the stock in a corporation by one person does not dissolve the corporation." *Mathews* v. *Fort Valley Cotton Mills,* 179 *Ga.* 580, 588 (176 S. E. 505). "A corporation by merely ceasing to exercise its franchise and selling all of its property, does not cease to exist." *Talum* v. *Leigh,* 136 *Ga.* 791 (72 S. E. 236, Ann. Cas. 1912C, 216).

4. The plaintiff's petition is loosely drawn. Counsel for neither party has cited any authorities in his brief. But from a careful study of the petition we have concluded that it was not subject to the general demurrers, and that the court erred in sustaining the demurrers and in dismissing the action.

*Judgment reversed. Felton and Parker, JJ., concur.*