37621.   HOME FINANCE COMPANY OF ROME, GEORGIA, INC. *v.* BANK OF LAFAYETTE *et al.*

Decided June 26, 1959—Rehearing denied July 16, 1959.

*Wright, Rogers, Magruder & Hoyt, Clinton J. Morgan,* for plaintiff in error.

*G. W. Langford, Matthews, Maddox, Walton & Smith,* contra.

FELTON, Chief Judge. ■ The Bank of LaFayette sued Home Finance Company of Rome, Georgia, Inc., to recover the amounts of two checks dated December 10, 1957, drawn on The National City Bank of Rome by Home Finance Company of Rome, Georgia, Inc., and payable to Mavity Motor Company. The petition alleged that Mavity Motor Company endorsed said checks "for deposit only to Mavity Motor Company" and deposited the checks to the credit of Mavity Motor in The Bank of LaFayette. The petition further alleged that at the time Mavity Motor Company endorsed and deposited said checks in said bank, the bank credited the full amount of the checks to the general account of the Mavity Motor Company without restriction and that thereafter on the same date the bank, relying upon the checks, allowed Mavity Motor Company to check, and that said Mavity Motor Company did check, against said deposit in the full amount of said checks, and that after the defendant had made and delivered said checks and after they had been deposited in the plaintiff bank and the Mavity Motor Company had been allowed to check against said deposit the defendant ordered and directed the drawee, The National City Bank of Rome, not to pay the same, and that upon presentation of the said checks to The National City Bank of Rome for payment they were dishonored by the drawee and were not paid for the reason that the defendant had countermanded payment of the checks. Under the authority of *Pike* v. *First National Bank of Rome*, 99 *Ga. App.* 598 (109 S. E. 2d 620), the court did not err in overruling the general demurrer to the petition.

■ We have been unable to find an authoritative ruling which fits the facts in this case but we think that the special concurrence by three justices in *Faughnan* v. *Bashlor*, 163 *Ga.* 525 (136 S. E. 545), states the correct rule and we think that the principle stated therein controls under the facts of this case. The concurring opinion in the above cited case states: "One of the defendants filed a motion to dismiss the petition for lack of service upon her. She likewise demurred generally to the petition, but filed the same subject to her motion to dismiss, reserving the right to insist upon this motion. Thereafter the demurrer was heard by the trial judge, and it does not appear that the de-

fendant made any objection to the hearing upon her demurrer, or that she then insisted on her motion to dismiss the petition for want of service. A judgment was rendered by the trial court overruling the demurrer, and thereafter the defendant insisted on her motion to dismiss for want of service. In these circumstances she waived her right to insist upon her motion to dismiss for lack of service, and service was thereby waived." The fact that in this case the judge himself set the time for the consideration of demurrers and the fact that the parties had discussed the trial of the traverse and the attack upon the service does not take this case out of the foregoing rule. The judge would not be expected to remember whether demurrers were filed subject to other pleadings or contentions or not and it would have been quite easy for defendant's attorney to object to the hearing of the general demurrer before the issue as to service had been decided. Any other conclusion would put a defendant in such a case as this in the position of being able to take a chance on a favorable ruling on the demurrer and if it lost to fall back upon its attack on the service. In this case it would have been a simple and easy matter for the defendant's counsel to call the court's attention to the attack on the service and to either insist on a continuance as to the demurrer or to request the judge to make his ruling on demurrer subject to the outcome of the attack on the service. We think that under the facts the defendant waived the attack upon the service. The ruling in *Pate* v. *Brock*, 95 *Ga. App.* 594 (98 S. E. 2d 404), does not control here for the reason that in that case there was an attack made upon the service actually attempted and there was no traverse of the officers' return. Another distinction is that the question raised by the demurrer was the same as that raised by the plea.

■ The evidence showed without dispute that C. M. Gilbert, the vice-president of the plaintiff bank, was in charge of all departments of the bank except the loan department, and that he, on December 10, dishonored, rejected and returned a check for $8,592.75, drawn by Mavity Motor Company to the order of Home Finance Company, because the Mavity Motor Company did not have sufficient funds to cover the check. Mr. Gilbert further testified that he, on the next morning, permitted Mrs.

Mavity to withdraw in cash $9,510.03, which virtually depleted the account; that he let Mrs. Mavity have this money, knowing not only that the withdrawal was on uncollected items but that the uncollected items were checks drawn by Home Finance Company. Code § 14-502 provides in subsection 3 that, "a holder in due course is a holder who has taken the instrument . . . in good faith and for value." Code § 14-506 provides, "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." The facts above stated made a jury question whether they were sufficient to place the bank on inquiry as to whether the defendant would stop payment on its checks and whether with such notice the cashing of the two checks for the Mavity Motor Company amounted to bad faith on the part of the bank. It was therefore error for the court to direct a verdict in favor of the plaintiff. *Stewart* v. *Western Union Telegraph Co.*, 83 *Ga. App.* 532 (64 S. E. 2d 327) and cases cited; Code §§ 14-506, 37-116; *Bank of Commerce* v. *Knowles*, 32 *Ga. App.* 800 (2) (124 S. E. 910) and cases cited; *Archibald Hardware Co.* v. *Gifford*, 44 *Ga. App.* 837 (3) (163 S. E. 254); *Park* v. *Buxton*, 10 *Ga. App.* 356 (73 S. E. 557).

■ The first ground of the amended motion for new trial complains that the court erred in permitting the vice-president of the plaintiff bank to testify: "We paid absolutely no attention to it; that is a form put on there by the printer and every deposit ticket in the world has it there and we don't pay any attention." The objection to this testimony was that it varied the terms of the contract contained in a deposit slip. The form provision in the deposit slip provided that as to items for collection the bank acted only as collecting agent for the depositor subject to final payment in cash or solvent credits. The court technically erred in admitting this testimony as it tended to vary the terms of the contract contained in the deposit slip. Under the facts this was harmless error as the facts show that the bank became a holder in due course provided it acted in good faith.

■ In special ground 2 the defendant complains that the court

refused to allow the bank's vice-president to answer the following question: "Will you explain just why and how a check dated December 13th was paid and cleared through your bank on December 3rd?" The refusal to admit this testimony was not error for the reason that it illustrated no valid and pertinent issue in the case.

The court did not err in overruling the defendant's general demurrer to the petition or in dismissing the plea in abatement and traverse of service or in denying the defendant's motion for a judgment notwithstanding the verdict, but did err in denying the motion for new trial as amended.

*Judgments affirmed in part and reversed in part. Quillian and Nichols, JJ., concur.*

On Motion for a Rehearing by Bank of LaFayette.

■ The Bank of LaFayette contends that the ruling in *Citizens & Southern Nat. Bank* v. *Johnson,* 214 *Ga.* 229 (104 S. E. 2d 123) controls this case. All the Supreme Court held in that case was that under the facts there might have been a mistake in judgment and that a mere mistake of judgment did not amount to bad faith. The court there stated in different words what we understood the rule to be, to wit: "To constitute bad faith by a purchaser of a negotiable instrument before maturity he must have acquired it with actual knowledge of its infirmity or with *a belief based on the facts or circumstances as known to him that there was a defense* or *he must have acted dishonestly."* (Emphasis supplied.)

■ The bank also contends that Code § 37-116 was superseded by that section of the Negotiable Instruments Law, now Code § 14-506. Code § 37-116 provides: "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." The rule before the passage of the uniform act in 1924 was embodied in Code (1910) § 4291 which provided: "Any circumstances which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." The gravamen of the old rule

was diligence. That of the new rule is actual knowledge of facts indicative of a defense, or bad faith. The subject of bad faith was not in the old law. The new law, while it eliminated the former rule that negligence alone would defeat the holder, added another element, that of bad faith. Since mere negligence was eliminated and bad faith or actual knowledge substituted, it follows that Code § 37-116 was not superseded for all purposes by the uniform act since bad faith can be manifested by a failure to notice and investigate facts when good faith requires investigation. And while mere negligence is not enough to show bad faith, negligence can reach such a degree that a jury could infer bad faith therefrom. See Britton on Bills and Notes, §§ 100 through 112. We hold that Code § 37-116 was not repealed completely by the act of 1924 (Ga. L. 1924, pp. 126-165), but that it is still applicable to negotiable instruments covered by the act insofar as it becomes pertinent to the application of the provisions of Code § 14-506. See *Pickett v. Bank of Ellijay*, 182 *Ga.* 540 (186 S. E. 426). The ruling in this case is based on the fact that the knowledge of all the facts by one individual officer of the bank raises the question of good faith. It is not implied that the question would arise under any other circumstances. Large banks employ many officers and employees and we do not mean to intimate that the aggregate knowledge of two or more officers or employees would have the effect of raising the issue of bad faith where partial knowledge of any individual uncommunicated to another would not in itself raise the issue.

*Rehearing denied.*